# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v HARDY
## PEOPLE v GLENN

Docket Nos. 144327 and 144979. Argued May 8, 2013 (Calendar Nos. 2 and 3). Decided July 29, 2013.

Donald Michael Hardy was convicted in the Oakland Circuit Court following his plea of guilty to one count of carjacking, MCL 750.529a, and was sentenced by the circuit court, Michael D. Warren, Jr., J., to 12 to 50 years' imprisonment. When scoring the sentencing guidelines, the circuit court, assessed 50 points for offense variable (OV) 7 (aggravated physical abuse), MCL 777.37, accepting the prosecution's argument that Hardy's act of displaying a shotgun during the carjacking, coupled with pointing it at the victim and "racking" it, constituted conduct designed to substantially increase the fear and anxiety the victim suffered during the offense; defense counsel agreed to the score assessed. Hardy filed a motion for resentencing, challenging the OV scoring and claiming ineffective assistance of counsel, which the circuit denied. Hardy filed a delayed application for leave to appeal in the Court of Appeals, SHAPIRO, P.J., and SAWYER and HOEKSTRA, JJ., which the majority denied for lack of merit on the grounds presented; SHAPIRO, P.J., would have remanded for resentencing on the basis that OV 7 was not properly scored. Unpublished order of the Court of Appeals, entered November 18, 2011 (Docket No. 306106). The Supreme Court granted Hardy's application for leave to appeal. 491 Mich 934 (2012).

Devon DeCarlos Glenn, Jr. was convicted in the Jackson Circuit Court following his pleas of guilty to armed robbery, MCL 750.529, and felonious assault, MCL 750.82, and was sentenced by the circuit court, John G. McBain, J., to 15 to 30 years' imprisonment for the armed robbery conviction and 18 to 48 months' imprisonment for the felonious assault conviction. When scoring the sentencing guidelines, the circuit court assessed 50 points for OV 7 over defense counsel's objection, concluding that Glenn's actions when robbing a gas station convenience store of striking the employees with the butt of his weapon was intended to make the employees afraid and to move faster, which constituted conduct designed to substantially increase the fear and anxiety the victims suffered during the offense. The Court of Appeals, BECKERING, P.J., and OWENS and SHAPIRO, JJ., vacated defendant's sentence and remanded for resentencing, concluding that although Glenn's conduct used more violence than was strictly necessary to complete an armed robbery, it was not egregious enough in relation to the other conduct listed in MCL 777.37(1)(a) to justify the assessment of 50 points for OV 7. 295 Mich App 529, 536 (2012). The Supreme Court granted the prosecution's application for leave to appeal. 491 Mich 934 (2012).

In an opinion by Justice VIVIANO, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, ZAHRA, and MCCORMACK, the Supreme Court *held*:

Fifty points are properly assessed under OV 7, in part, for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount. The relevant questions are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and if so (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount.

1. On appeal, a circuit court's sentencing guidelines' factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the determined facts are adequate to satisfy the scoring conditions prescribed by statute is a question of statutory interpretation that is reviewed de novo.

2. A trial court may assess 50 points under OV 7, MCL 777.37(1)(a), if a victim was "treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." A defendant's conduct does not have to be similarly egregious to "sadism, torture, or excessive brutality" for OV 7 to be scored at 50 points. Rather, the second "or" in the MCL 777.37(1)(a) phrase, indicates that the "conduct designed" language is an independent clause that has a meaning independent of the first three actions that justify an assessment of 50 points for OV 7. Fifty points are properly assessed for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount. Absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables. The relevant questions are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and if so (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount. The circuit court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue and consider: (1) the severity of the crime, (2) the elements of the offense, and (3) the different ways in which those elements can be satisfied. The court must then determine the fear or anxiety associated with the minimum conduct necessary to commit the offense and compare it with the actual record evidence of the crime and how it was committed to determine whether the defendant's conduct went beyond the minimum necessary to commit the crime and whether it was more probable than not that such conduct was intended to increase the victim's fear or anxiety by a considerable amount.

3. The circuit court did not err by assessing 50 points for OV 7 in *Hardy*. A preponderance of the evidence shows that Hardy's action of "racking" the shotgun while pointing it at the victim, when merely displaying the weapon or pointing it at the victim was sufficient to complete the crime, was designed to substantially increase the fear of his victim beyond the usual level that accompanies a carjacking, to the point where he feared imminent death. Hardy's trial counsel was not ineffective for failing to object to the scoring of OV 7 because such a motion would have been meritless.

4. The circuit did not err by assessing 50 points for OV 7 in *Glenn* and the Court of Appeals erred by vacating Glenn's sentence on this basis. Glenn's conduct of threatening the

employees with what appeared to be a sawed-off shotgun and using it to strike them in the head in the course of an armed robbery went beyond that which was necessary to commit the crime, and the conduct was designed to increase the fear of his victims by a considerable amount.

*Hardy* affirmed.

In *Glenn*, Court of Appeals decision reversed and case remanded to the circuit court for reinstatement of the judgment of sentence.

Justice MCCORMACK, concurring, joined the majority opinion in full, but wrote separately to encourage the Legislature to amend MCL 777.37, OV 7, to define or more clearly articulate its intent when it included the "conduct designed" language in this offense variable. The potential for subjectivity in scoring OV 7 is likely to cause disparate sentencing outcomes for defendants, which is contrary to the goal of uniformity set by the Legislature when the guidelines were adopted.

Justice CAVANAGH, concurring in part and dissenting in part, agreed with the majority's clarification of the standard of review for sentencing guidelines scoring issues. He disagreed with the majority's interpretation of OV 7 and would have held that the "conduct designed" language of OV 7 must be interpreted in light of the other three categories under which OV 7 can be scored and thus must be of the same class as sadism, torture, and excessive brutality. In reaching its decision, the majority ignored the legislative history of OV 7, and failed to consider both the entirety of the statute and the statutory scheme of all offense variables, MCL 777.31 *et seq*.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED JULY 29, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                      No. 144327

DONALD MICHAEL HARDY,

    Defendant-Appellant.

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                      No. 144979

DEVON DECARLOS GLENN, JR.,

    Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH

VIVIANO, J.

In these consolidated cases, we consider the proper assessment of points under offense variable (OV) 7 (aggravated physical abuse).[1] Specifically, our focus is on what type of conduct under OV 7 constitutes "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[2] In both cases, the circuit courts concluded that the defendants' respective conduct supported assessing 50 points for OV 7 pursuant to MCL 777.37(1)(a). We conclude that the plain meaning of the phrase "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense" encompasses both defendant Hardy's act of racking a shotgun during a carjacking and defendant Glenn's violent behavior during an armed robbery. Accordingly, we affirm the circuit court's scoring decision in *Hardy*. In *Glenn*, we reverse the judgment of the Court of Appeals and remand the case to the circuit court for reinstatement of defendant Glenn's July 22, 2010 judgment of sentence.

## I. FACTS AND PROCEDURAL HISTORY

### A. *PEOPLE v HARDY*

In July 2010, defendant Hardy and an accomplice approached a man, who had just exited his car. Hardy pointed a shotgun at the man, racked it,[3] and demanded that the man give him everything he had. The man grabbed the barrel of the shotgun and tried to

---

[1] MCL 777.37.

[2] MCL 777.37(1)(a).

[3] To "rack" a shotgun is to pull the slide of the weapon along the forestock, then push it back to its original position. See *United States Army Technical Manual* 9-1005-338-13&P, "Mossberg 12-Guage Shotgun Model 500/590," 0004 00-2 (2005).

2

wrench it out of Hardy's grasp, but Hardy overpowered him, and Hardy and his accomplice drove off in the man's vehicle. Police arrested both men a few hours later.

Hardy pleaded guilty to one count of carjacking.[4] At sentencing, the prosecutor argued that the circuit court should assess 50 points for OV 7 because Hardy had not only displayed a shotgun, but had also pointed it at the victim and racked it. The prosecutor claimed that the act of racking a shotgun was "conduct designed only to threaten the victim with immediate violent death." Defense counsel agreed to the scoring, stating, "I cannot argue with that, your Honor." Accordingly, the circuit court assessed 50 points for OV 7 and sentenced Hardy to 12 to 50 years' imprisonment.

Hardy filed a motion for resentencing, challenging the OV 7 scoring and claiming that defense counsel had been constitutionally ineffective for consenting to it. The circuit court denied the motion, concluding that the 50-point score under OV 7 was proper and that defense counsel was not constitutionally ineffective. After Hardy filed a delayed application for leave to appeal in the Court of Appeals, a majority of the panel denied leave for lack of merit in the grounds presented.[5] However, the dissenting judge would have remanded for resentencing on the ground that the circuit court incorrectly scored OV 7.

---

[4] MCL 750.529a.

[5] *People v Hardy*, unpublished order of the Court of Appeals, entered November 18, 2011 (Docket No. 306106).

3

We granted leave to consider whether the circuit court erroneously assessed 50 points for OV 7 because Hardy racked the shotgun during the carjacking and whether defense counsel was ineffective for waiving this issue.[6]

## B. *PEOPLE v GLENN*

In August 2009, defendant Glenn and an accomplice entered a gas station convenience store. He carried what two store employees later described as a "sawed-off shotgun."[7] Glenn ordered one of the employees to approach the front counter. As the employee did so, Glenn struck him in the back of the head with the butt of the weapon. The blow was so forceful that it knocked him to the ground. Glenn then forced both employees behind the counter and demanded money, which Glenn grabbed out of the cash register and safe. He hit the second employee in the side of the head with the butt of his weapon before fleeing with his accomplice in a waiting getaway car. Soon afterward, police stopped the getaway car and arrested Glenn. Neither employee suffered any injuries.

Glenn pleaded guilty to one count of armed robbery[8] and one count of assault with a dangerous weapon.[9] At sentencing, the prosecutor argued that striking the employees

---

[6] *People v Hardy*, 491 Mich 934 (2012).

[7] In fact, the weapon was an "airsoft" gun that was designed to look like a real firearm. Airsoft guns shoot plastic pellets, rather than live ammunition. *An-Hung Yao v Indiana*, 975 NE2d 1273, 1275, n 1 (Ind, 2012).

[8] MCL 750.529.

[9] MCL 750.82. This latter charge resulted from Glenn pointing his airsoft gun at an off-duty corrections officer who had pursued Glenn as he fled the gas station.

4

with the weapon was designed to "get them to move faster, to be afraid," and that this was sufficient to assess 50 points for OV 7 because it involved "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." The circuit court agreed with the prosecutor and assessed 50 points for OV 7 over defense counsel's objection. The circuit court then sentenced defendant to 15 to 30 years' imprisonment for the armed robbery and 18 to 48 months' imprisonment for the felonious assault.[10]

In a published opinion, the Court of Appeals vacated defendant's sentence and remanded for resentencing.[11] The Court acknowledged that Glenn, by striking the employees, used more violence than was "strictly necessary" to complete an armed robbery.[12] But the Court of Appeals concluded that the circuit court erred because OV 7 was only "meant to be scored in particularly egregious cases involving torture, brutality, or similar conduct designed to *substantially* increase the victim's fear, not in every case in which some fear-producing action beyond the bare minimum necessary to commit the crime was undertaken."[13]

---

[10] The Court of Appeals incorrectly stated that Glenn's armed robbery sentence was 18 to 30 years in prison. *People v Glenn*, 295 Mich App 529, 530; 814 NW2d 686 (2012).

[11] *Id.* at 536.

[12] *Id.*

[13] *Id.*

We granted leave to appeal to consider whether the circuit court erroneously assessed 50 points for OV 7 because Glenn committed "assaultive acts beyond those necessary to commit the offense."[14]

## II.  STANDARD OF REVIEW

We take this opportunity to clarify the applicable standards of review for a sentencing guidelines scoring issue.  In *Glenn*, the Court of Appeals stated that an appellate court "reviews a trial court's scoring of the sentencing guidelines to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score."[15]  This is an imprecise statement of applicable law.

As we have explained before, the abuse of discretion standard formerly predominated in sentencing review.[16]  But when the Legislature enacted the sentencing guidelines in 1998, it prescribed detailed instructions for imposing sentences, thereby reducing the circumstances under which a judge could exercise discretion during sentencing.[17]  Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.[18]

---

[14] *People v Glenn*, 491 Mich 934 (2012).

[15] *Glenn*, 295 Mich App at 532.

[16] *People v Babcock*, 469 Mich 247, 253-254; 666 NW2d 231 (2003).

[17] *Id.* at 255.  Now, under the sentencing guidelines, the abuse of discretion standard only applies when an appellate court reviews a circuit court's conclusion that there was a "substantial and compelling reason" to depart from the guidelines.  *Id.* at 265.

[18] *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).  Several recent Court

6

Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.[19]

In these cases, we review for clear error the factual findings that the defendants' conduct was designed to substantially increase the fear and anxiety of their victims. We review de novo whether these acts were sufficient to assess 50 points for OV 7.

## III. ANALYSIS

### A. INTERPRETING MCL 777.37 (OV 7)

As we have stated before, our goal in interpreting a statute "is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written."[20]

MCL 777.37 governs OV 7. MCL 777.37(1) provides, in full:

> (1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

---

of Appeals decisions have stated that "[s]coring decisions for which there is any evidence in support will be upheld." See, e.g., *People v Carrigan*, 297 Mich App 513, 514; 824 NW2d 283 (2012); *People v Phelps*, 288 Mich App 123, 135; 791 NW2d 732 (2010); *People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006). This statement is incorrect. The "any evidence" standard does not govern review of a circuit court's factual findings for the purposes of assessing points under the sentencing guidelines.

[19] *People v Babcock*, 469 Mich at 253 (2003).

[20] *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008) (quotation marks and citations omitted).

7

(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………….. 50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………..…………….… 0 points

A trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a). No party contends that any of the first three categories (sadism, torture, or excessive brutality) applies in these cases. Thus, our focus is on the fourth category—whether defendants engaged in "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[21]

Other than "sadism,"[22] the statute does not define the individual terms used in the listed categories, so we presume that the Legislature intended for the words to have their ordinary meaning.[23] Thus, we turn to the dictionary for guidance in interpreting the terms used in the phrase: "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[24]

---

[21] MCL 777.37(1)(a).

[22] MCL 777.37(3).

[23] MCL 8.3a.

[24] *People v Peals*, 476 Mich 636, 641; 720 NW2d 196 (2006).

The phrase begins with the words "conduct designed." "Designed" means "to intend for a definite purpose."[25] Thus, the word "designed" requires courts to evaluate the intent motivating the defendant's conduct.[26] Next, we come to the words "substantially increase." "Substantial" means "of ample or considerable amount, quantity, size, etc."[27] To "increase" means "to make greater, as in number, size, strength, or quality; augment."[28] Applying these definitions to the relevant text, we conclude that it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount.[29]

In *Glenn*, the Court of Appeals erred by ignoring the Legislature's second use of the word "or" in the provision at issue. MCL 777.37(1)(a), reads: "[a] victim was treated with sadism, torture, *or* excessive brutality *or* conduct designed to substantially increase

---

[25] *Random House Webster's College Dictionary* (2001).

[26] As in other areas of criminal law, "[i]ntent generally may be inferred from the facts and circumstances of a case." *In re People v Jory*, 443 Mich 403, 419; 505 NW2d 228 (1993). For this reason, a defendant does not have to verbalize his intentions for a judge to find that the defendant's conduct was designed to elevate a victim's fear or anxiety. Rather, a court can infer intent indirectly by examining the circumstantial evidence in the record that was proven by a preponderance of the evidence.

[27] *Random House Webster's College Dictionary* (2001).

[28] *Id.*

[29] We note that by the statute's own terms, the focus is on the intended effect of the conduct, not its actual effect on the victim. Accord *People v Kegler*, 268 Mich App 187, 191; 706 NW2d 744 (2005) ("Points are assessed where 'a victim *was treated with* . . . torture, or excessive brutality or conduct designed to increase' a victim's fear and anxiety. The statute does not require, for instance, that 'a victim *experienced* . . . torture, or excessive brutality or conduct designed to increase' fear and anxiety.") (emphasis added).

9

the fear and anxiety a victim suffered[.]"[30]  "Or" is a word "used to indicate a disunion, a separation, an alternative."[31]  While the first "or" may be interpreted as linking the first three categories in a common series, the second "or" separates the last OV 7 category from the series that precedes it.  Thus, the use of "or" before the phrase "conduct designed" shows that this phrase is an independent clause that has an independent meaning.  The Court of Appeals in *Glenn* therefore erred by interpreting the statute in a manner inconsistent with its plain meaning.

The Court of Appeals also erred in *Glenn* to the extent it concluded that "circumstances inherently present in the crime must be discounted for purposes of scoring an OV."[32]  To the contrary, absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables.  The sentencing guidelines explicitly direct courts to disregard certain conduct inherent in a crime when scoring OVs

---

[30] Emphasis added.

[31] *Mich Pub Serv Co v City of Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949).

[32] *Glenn*, 295 Mich App at 535.  The Court of Appeals relied on *People v Hunt*, 290 Mich App 317; 326; 810 NW2d 588 (2010), for this proposition.  In *Hunt*, the Court of Appeals reviewed a defendant's OV 7 score for his actions during a series of kidnappings and assaults, and it correctly noted that "unlike OV 1, OV 2, and OV 3, OV 7 does not state that '[i]n multiple offender cases, if 1 offender is assessed points for [the applicable behavior or result], all offenders shall be assessed the same number of points.'" *Id*. Likewise, the court also noted in *Hunt* that, MCL 777.38(2)(b) provides that, "[t]ransportation to a place of greater danger is appropriately scored under OV 8, but must be given a score of zero points when, as here, the sentencing offense is kidnapping." *Id*. But these observations do not establish the rule that the Court of Appeals stated in *Glenn* because they are properly understood as exceptions to the general rule that such conduct may be considered. *People v Gibson*, 219 Mich App 530, 534; 557 NW2d 141 (1996).

1, 3, 8, 11, and 13.[33]  In all other cases, "the Sentencing Guidelines allow a factor that is an element of the crime charged to also be considered when computing an offense variable score."[34]  It was error for the Court of Appeals to state or imply otherwise in *Glenn.*

However, we agree with the Court of Appeals that "[a]ll . . . crimes against a person involve the infliction of a certain amount of fear and anxiety."[35]  Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue.  To make this determination, a court should consider the severity of the crime,[36] the elements of the offense, and the different ways in which those elements can be satisfied.  Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense.[37]  Finally, the court should closely examine the pertinent record

---

[33] MCL 777.31(2)(e); MCL 777.33(2)(d); MCL 777.38(2)(b); MCL 777.41(2)(c); MCL 777.43(2)(e).

[34] *Gibson*, 219 Mich App at 534.

[35] *Glenn*, 295 Mich App at 536.

[36] OV 7 is scored for all offenses classified as "crimes against a person."  MCL 777.22(1).  This category of felonies encompasses a broad spectrum of crimes ranging from those that may cause little or no fear and anxiety to a victim during the offense, to those crimes that, by their very nature, tend to cause a great deal of fear and anxiety to a victim during the offense.

[37] We acknowledge that courts cannot calculate this "fear baseline" with mathematical certainty.  However, such precision is not required because it merely serves as a

11

evidence, including how the crime was actually committed by the defendant. As noted above, evidence which satisfies an element of an offense need not be disregarded solely for that reason. Instead, all relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount.

In summary, we conclude that a defendant's conduct does not have to be "similarly egregious" to "sadism, torture, or excessive brutality" for OV 7 to be scored at 50 points, and that, absent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7. The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount.[38]

---

benchmark against which to measure the intended increase in fear associated with defendant's conduct.

[38] One purpose of the sentencing guidelines is to facilitate proportionate sentences. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Justice CAVANAGH believes that our holding today "would result in disproportionate sentencing" because our interpretation of the "conduct designed" category does not require the same level of "very egregious" conduct as the other OV 7 categories to assess 50 points. *Post* at 6. We respectfully disagree. Our holding today does not conflict with the guidelines' goal of proportionality because it is for the Legislature, not this Court, to decide what types of conduct warrant similar scoring under MCL 777.37.

## B. APPLICATION TO *HARDY*

Evidence in the record, including Hardy's own plea colloquy, established that he pointed a shotgun at the victim and then racked it. The purpose of racking a shotgun is to pull a new round of ammunition from the magazine tube and slide it into the firing chamber.[39] Racking the weapon makes it ready to fire.[40]

We first consider whether racking the shotgun went beyond the minimum conduct necessary to commit a carjacking. A carjacking occurs "in the course of committing a larceny of a motor vehicle[.]"[41] While doing so, a defendant must use (1) "force or violence," (2) "the threat of force or violence," or (3) put "in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle."[42] Hardy threatened his victim with violence by pointing the shotgun at him and racking it, even though merely displaying the weapon or pointing it at the victim would have been enough to issue a threat. Because Hardy took the extra step of racking the shotgun, the circuit court correctly assesed 50 points for OV 7 as long as this conduct was designed to substantially increase the victim's fear beyond the usual level that accompanies a carjacking.

---

[39] *United States Army Technical Manual* 9-1005-338-13&P, "Mossberg 12-Guage Shotgun Model 500/590," 0004 00-2 (2005). This action would also extract and eject a spent casing if the weapon has already been fired. *Id.*

[40] *Id.* at 0005 00-1 – 00-2.

[41] MCL 750.529a(1).

[42] *Id.*

Hardy argues that he racked the shotgun solely for the purpose of getting his victim to comply, not to substantially increase his victim's fear. But racking a shotgun under these circumstances only urges compliance if doing so makes the victim fear imminent, violent death if he or she does not comply. Hence, even if Hardy's ultimate goal was to provoke compliant behavior, a preponderance of the evidence shows that his conduct was designed to substantially increase the fear of his victim beyond the usual level that accompanies a carjacking, to the point where the victim feared imminent death.

Because Hardy took the extra step of racking the shotgun, and because he did so to make his victim fear that a violent death was imminent, not just possible, the circuit court properly assessed 50 points for OV 7.

"Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion."[43] Because the circuit court properly scored OV 7, any objection to the court's assessment of points would have been meritless. As a result, Hardy's counsel did not provide ineffective assistance by failing to object to the scoring.

## C. APPLICATION TO *GLENN*

Turning to Glenn's case, we begin again by considering whether he went beyond the minimum conduct necessary to commit an armed robbery.[44] To commit this crime, a

---

[43] *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003).

[44] The sentencing court based its OV 7 scoring exclusively on Glenn's conduct during the armed robbery, not on his conduct during the subsequent felonious assault. In addition, the prosecutor does not argue that the conduct underlying the felonious-assault conviction merited OV 7 scoring. Accordingly, we do not consider whether that conduct could have formed an independent basis for scoring OV 7 in Glenn's case.

14

defendant must engage "in conduct proscribed under [MCL 750.530,]" Michigan's robbery statute, which criminalizes using "force or violence against any person who is present" at a larceny or assaulting or putting "the person in fear[,]" "in the course of committing a larceny."[45] To commit an armed robbery, the defendant must also either (1) possess " a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon," or (2) represent "orally or otherwise that he or she is in possession of a dangerous weapon[.]"[46] To rob the convenience store, Glenn could have simply put the victims in fear by orally representing that he had a weapon. Instead, he chose to threaten the victims with what appeared to be a sawed-off shotgun, and then used it to strike two different victims in the head. Hence, Glenn's conduct went beyond that necessary to commit an armed robbery.

We next consider whether this conduct was designed to increase the fear or anxiety of the victims by a considerable amount. By striking the employees in the head, knocking one to the ground, and forcing both of them behind the store counter, Glenn demonstrated to his victims that he was willing to follow through on his threat to harm them, and he placed them in a place of increased vulnerability, where escape was almost impossible. It is more probable than not that Glenn, like Hardy, engaged in this conduct to frighten his victims into compliance. We can infer this from the fact that Glenn assaulted the employees while making monetary demands. His conduct was designed to elevate his victims' fear from the concern that accompanies an unrealized threat (the fear

---

[45] MCL 750.529; MCL 750.530.

[46] MCL 750.529.

15

that a criminal will become violent), to the concern that accompanies actualized violence (the fear that an attacker's blows will cause injury or death). This constitutes a considerable amount of additional fear.

Because Glenn's conduct went beyond that necessary to effectuate an armed robbery, and because he intended for his conduct to increase the fear of his victims by a considerable amount, the Court of Appeals erred by holding that the circuit court incorrectly assessed 50 points for OV 7.

## IV. CONCLUSION

We hold that because a preponderance of the evidence established that Hardy racked a shotgun to increase the fear of his victim by a considerable amount, the circuit court properly assessed 50 points for OV 7 by finding that Hardy's conduct of racking a shotgun while pointing it at the victim constituted "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Accordingly, we affirm the circuit court's assessment of 50 points for OV 7 in *Hardy*.

We further hold that because a preponderance of the evidence established that Glenn struck two victims with the butt of what appeared to be a sawed-off shotgun, knocked one victim to the ground, and forced both victims behind a store counter to make

them fear imminent, serious injury or death, the circuit court appropriately assessed 50 points for OV 7. In *Glenn*, we reverse the Court of Appeals and remand the case to the circuit court for reinstatement of the judgment of sentence.

David F. Viviano
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

17

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                                        No. 144327

DONALD MICHAEL HARDY,

       Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                                        No. 144979

DEVON DECARLOS GLENN, JR.,

       Defendant-Appellee.

_____

MCCORMACK, J. (*concurring*).

I join Justice VIVIANO's opinion in full because I believe that it goes as far as it can to provide the best possible guidance for trial courts charged with applying the statutory language at issue in this case. I write separately to encourage the Legislature to amend MCL 777.37, offense variable (OV) 7, to define, or more clearly articulate its intent in including, the language "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

The Legislature adopted the sentencing guidelines to promote uniformity in sentencing.[1]  However, in my view, the potential for subjectivity inherent in the "conduct designed" language is likely to cause disparate outcomes for criminal defendants in this state even with the guiding principles today's decision provides.  Such a result is troubling.  Given that scoring OV 7 is an all-or-nothing proposition—zero points versus 50 points—and that a 50-point increase in a defendant's OV score is likely to result in a significant increase in a defendant's minimum sentence, the need for clarity and consistency in its scoring is paramount if courts are to administer justice.  As the Legislature appears poised to revisit the sentencing guidelines in the near future,[2] I believe that these cases illustrate that OV 7 is an excellent example of one area that could benefit from further scrutiny and hopefully, further elucidation.

We are charged with interpreting the law as it exists, however, and I believe that Justice VIVIANO's opinion faithfully does so with as much clarity as the statutory language permits.  I therefore join the majority opinion in its entirety.

Bridget M. McCormack

---

[1] *People v Smith*, 482 Mich 292, 312; 754 NW2d 284 (2008).

[2] See, e.g., Gary Heinlein, *New Michigan Prison Sentencing Guidelines Under Review*, Detroit News <http://www.detroitnews.com/article/20130708/METRO06/307080011> (accessed July 17, 2013).

2

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

No. 144327

DONALD MICHAEL HARDY,

       Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

No. 144979

DEVON DECARLOS GLENN, JR.,

       Defendant-Appellee.

_____

CAVANAGH, J. *(concurring in part, dissenting in part)*.

I concur with the majority that the proper standard of review under the sentencing guidelines is that the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

I respectfully dissent from the majority's interpretation of offense variable (OV) 7, MCL 777.37, however, because I believe that the majority errs by holding that the phrase "conduct designed to substantially increase the fear and anxiety a victim suffered during

the offense" must be interpreted without reference to the other three categories under which OV 7 can be scored: sadism, torture, and excessive brutality. In reaching its conclusion, the majority ignores the history of OV 7 and fails to consider not only the entirety of MCL 777.37, but also the statutory scheme of all offense variables, MCL 777.31 *et seq*. Contrary to the majority position, I would hold that the "conduct designed" category of OV 7 should be interpreted in light of the other three categories within the statute, and thus must be of the same class as sadism, torture, and excessive brutality.

## I. SENTENCING GUIDELINES GENERALLY

The current sentencing guidelines, MCL 777.1 *et seq*., were enacted in 1998. The purpose of the sentencing guidelines is to facilitate proportionate sentencing. *People v Smith*, 482 Mich 292, 305; 754 NW2d 284 (2008). The sentencing guidelines take into account the severity of a criminal offense along with the offender's criminal history and thereby determine an appropriate proportionate sentencing range. *Id*. The minimum sentence is scored on grids categorized by the offense class as found in MCL 777.11 *et seq*. See MCL 777.21. Each grid is comprised of OV score ranges and prior record variable (PRV) level ranges. See MCL 777.61 *et seq*. The OV score is calculated by adding all the scores of all the applicable OVs. MCL 777.21(a). The upper-most range on each of the several charts is "100+ points," and, therefore, any OV score of 100 points or above results in the same sentencing guidelines range. Stated differently, once an offender reaches 100 OV points, additional OV points have no direct effect on the length of the offender's sentence under the statutorily set guidelines.

2

## II. HISTORY OF OV 7

As originally enacted in 1998, MCL 777.37 (OV 7) stated:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with *terrorism*, sadism, torture, or excessive brutality…………………………………………………..50 points

(b) No victim was treated with terrorism, sadism, torture, or excessive brutality……………………………………………0 points

(2) As used in this section:

*(a) 'Terrorism' means conduct designed to substantially increase the fear and anxiety a victim suffers during the offense.*

(b) 'Sadism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification. [Emphasis added.]

In April 2002, MCL 777.37 was amended to its current version to state:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with sadism, torture, or excessive brutality *or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense*…………………………50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense…………………………0 points

(2) Count each person who was placed in danger of injury or loss of life as a victim.

(3) As used in this section, "sadism" means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification. [Emphasis added.]

3

Notably, before the 2002 amendment, the word "terrorism" was defined as "conduct designed to substantially increase the fear and anxiety a victim suffers during the offense"—the exact language of the current "conduct designed" category in the amended version of OV 7. Concurrent with the 2002 amendment to OV 7, a new offense variable was created, OV 20, MCL 777.49a, which directs scoring for an act of terrorism. It is important to recognize that OV 20 incorporates a different definition for "act of terrorism" than that which existed for "terrorism" in the preamendment version of OV 7. Under OV 20, an "act of terrorism" is defined by referring to the definition set forth in the Michigan Anti-Terrorism Act, MCL 750.543b, which was also enacted in 2002. [1]

The enactment of MCL 750.543b, the amendment of OV 7, and the enactment of OV 20 were part of comprehensive changes made by the Legislature in response to the September 11, 2001, attacks. 2002 PA 113, 137; see also, Woodside & Gershel, *The USA Patriot Act and Michigan's Anti-Terrorism Laws: New Anti-Terrorism Laws Make Sweeping Changes*, 82 Mich B J 20 (2003) (describing the key components of both

---

[1] An act of terrorism is defined under MCL 750.543b as follows:

(a) "Act of terrorism" means a willful and deliberate act that is all of the following:

(*i*) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(*ii*) An act that the person knows or has reason to know is dangerous to human life.

(*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

Michigan and Federal legislation passed in response to 9/11); 2B Gillespie, Michigan Criminal Law & Procedure (2d ed), § 38A:1, pp 521-528 (summarizing the antiterrorist legislation passed by Michigan in response to 9/11). The changes also reflect a conceptual shift in the meaning of "terrorism." Young, *Defining Terrorism: The Evolution of Terrorism as a Legal Concept in International Law and its Influence on Definitions in Domestic Legislation*, 29 BC Int'l & Comp L Rev 23, 30 (2006) (explaining that "terrorism," traditionally a term of political stigmatization, is evolving into a complex legal term); see also Hardy & Williams, *What is "Terrorism"?: Assessing Domestic Legal Definitions*, 16 UCLA J Int'l L & Foreign Aff 77, 155 (2011) (explaining that various international bodies have developed their respective definitions of "terrorism").

## III. STATUTORY ANALYSIS OF OV 7

To begin with, I agree with the majority that the phrase "conduct designed" in OV 7 "requires courts to evaluate the intent motivating the defendant's conduct." *Ante* at 9. Indeed, the fact that the "conduct designed" category focuses on a defendant's intent, whereas sadism, torture, and excessive brutality concern the *nature* of a defendant's conduct, is what gives the "conduct designed" category meaning independent of the other three categories in OV 7. Thus, my primary disagreement with the majority lies with its interpretation of the phrase "substantially increase the fear and anxiety a victim suffered during the offense."

While it is true that our rules of statutory construction dictate that the "conduct designed" category be interpreted as an "independent clause that has an independent

5

meaning," *ante* at 10, that rule is not violated by allowing the sadism, torture, and excessive brutality categories to educate our understanding of the conduct designed category. As explained previously, the fact that the conduct designed categories focus on the defendant's *intent* ensures that it has meaning independent of the other three categories, which consider the *nature* of the defendant's conduct.

Moreover, we have long recognized that "[a]lthough a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context," and we have accordingly held that "[i]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) (citation and quotation marks omitted). The importance of this rule in these cases cannot be overstated. If the "conducted designed" language is considered without reference to the other conduct listed in OV 7, the "conduct designed" category could be interpreted to include conduct that differs substantially from sadism, torture, and excessive brutality and thereby permit scoring points under OV 7 on the basis of widely divergent conduct. In my view, this cannot be the proper interpretation of OV 7 because that approach would result in disproportionate sentencing, contrary to one of the principal motivating factors behind the enactment of the legislative sentencing guidelines—where sadism, torture, and excessive brutality all speak of very egregious conduct, the majority's interpretation of the "conduct designed" category does not require nearly as egregious conduct by a defendant. Therefore, in order for all four categories to have independent meaning while also ensuring that OV 7 does not result in disproportionate sentences, the "conduct

6

designed" category must be interpreted to be of the same class as sadism, torture, and excessive brutality.

The majority argues that this is not the proper interpretation of OV 7 because of the presence of a second "or" in MCL 777.37(1)(a).[2] Specifically, the majority explains that "or" is a word "used to indicate a disunion, a separation, an alternative" and thus interprets the second "or" in MCL 777.37(1)(a) to evidence the Legislature's intent to "separate[] the last OV 7 category from the series that precedes it." *Ante* at 10. Yet when considering the historical development of OV 7 already discussed in part II, the majority's heavy reliance on the second "or" in OV 7 to entirely divorce the "conduct designed" category from the other three categories of conduct listed in OV 7 is even more questionable.

Although I agree with the majority that it is the Legislature's role to determine "what types of conduct warrant similar scoring under MCL 777.37," *ante* at 12 n 38, in my view, the history of OV 7 evidences the Legislature's intent in crafting the current version of MCL 777.37. As previously explained, the addition of OV 20 was part of Michigan's antiterrorism efforts. Adding an offense variable dedicated to addressing terrorist activity necessitated the removal of the word "terrorism" in OV 7, which addresses conduct of a wholly different character than OV 20. The Legislature, responding to the shifting legal definition of terrorism, simply replaced the word "terrorism" with what had been the definition of terrorism under the preamendment

---

[2] MCL 777.37(1)(a) states in relevant part: "[a] victim was treated with sadism, torture, or excessive brutality *or* conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Emphasis added.

7

version of OV 7. The amendment, therefore, was necessary to accommodate changes in the law outside of OV 7 and manifests the Legislature's intent to maintain OV 7's preamendment meaning in light of the changing definition of "terrorism" and the addition of OV 20. Accordingly, in my view, the Legislature did not intend to change the meaning of OV 7 and, thus, the preamendment version of OV 7 is highly instructive in determining the proper interpretation of the current version of the statute.

Notably, the preamendment version of OV 7 provided a comma-delineated list separated by a single "or," which even the majority admits should be interpreted to link the categories in a common series. See *G C Timmis*, 468 Mich at 421-422, (noting that "words grouped in a list should be given related meaning") (quotation marks and citation omitted), citing *Beecham v United States*, 511 US 368, 371; 114 S Ct 1669; 128 L Ed 2d 383 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."). Terrorism, which was statutorily given the same meaning as the current "conduct designed" category, was included in the aforementioned list with the other three categories, and, thus, it was intended to be given a related meaning. Accordingly, because sadism, torture, and excessive brutality all speak of egregious conduct, I believe that the "conduct designed" category also speaks of similarly egregious conduct. Although I recognize that when amending OV 7 the Legislature inserted an additional "or," I believe that the addition of the second "or" should be given little weight in this situation. Cf. *People v Harrison*, 194

8

Mich 363, 370; 160 NW 623 (1916).[3]  Therefore, the "conduct designed" category should be given related meaning to the other three categories in the current version of OV 7.

Additionally, the majority fails to interpret OV 7 in light of the legislative scheme of the sentencing guidelines as a whole.  MCL 777.1 *et seq.*  First, conspicuously absent from the majority's analysis is any consideration of the fact that OV 7 requires the scoring of 50 points on an all-or-nothing basis.  Second, I believe that it is relevant that the only other offense variables that have a point value as high as 50 points require either a killing or multiple sexual penetrations during the commission of a crime. See OV 3, MCL 777.33; OV 6, MCL 777.36; OV 9, MCL 777.39; OV 11, MCL 777.41; OV 13, MCL 777.43.  Third, none of the other four offense variables that score on an all-or-nothing basis (as opposed to a scale depending on the severity of a defendant's conduct) are scored similarly to the 50 points assessed for OV 7.   In fact, the potential for 50 points under OV 7 is three times higher than any other all-or-nothing offense variable.  See, e.g., OV 4, MCL 777.34; OV 5, MCL 777.35; OV 8, MCL 777.38; and OV 14, MCL 777.44.   In my view, these aspects of the sentencing guidelines bolster the conclusion that the majority errs in this case.

---

[3] *Harrison*, 194 Mich at 370, held that

> "[e]very change of phraseology . . . does not indicate a change of substance and intent. . . .  A mere change in the words of a revision will not be deemed a change in the law unless it appears that such was the intention. The intent to change the law must be evident and certain; there must be such substantial change as to import such intention, or it must otherwise, be manifest from other guides of interpretation, or the difference of phraseology will not be deemed expressive of a different intention." [Quoting 2 Lewis Sutherland on Statutory Construction (2d ed), § 401.]

As previously explained, offense variables are scored in ranges that extend from 0 to 100 points; thus, scoring 50 points under OV 7 alone places a defendant halfway to the maximum possible point total under the offense variables. Accordingly, to maintain the principle of proportionality upon which the sentencing guidelines are based, only particularly heinous conduct should justify scoring points under OV 7, which is evidenced by the fact that the only other conduct that commands such a score is homicide and multiple sexual penetrations. There can be little doubt that sadism, torture, and extreme brutality are heinous acts that the Legislature determined warrant the heavy toll of an all-or-nothing score of 50 points under OV 7. The fact that the first three OV 7 categories require a defendant's conduct to be extreme, intense, or ruthless[4] comports with the high point value and inflexible nature of OV 7. Therefore, by applying the "conduct designed" category so liberally that it is not of a similar class as sadism, torture, and excessive brutality, the majority's analysis ignores the statutory language and history of OV 7, and raises grave concerns regarding the proportionality of sentencing, as Justice MCCORMACK notes in her concurring opinion.

On the other hand, the majority reasonably argues that the bar for scoring the "conduct designed" category cannot be so high that the category loses all meaning in comparison to the other categories. Accordingly, the majority's conclusion that OV 7 requires "conduct that was intended to make a victim's fear or anxiety greater by a

[4] See MCL 777.37(3), defining "sadism" in part as "conduct that subjects a victim to *extreme* or prolonged pain . . . ." (Emphasis added). See also *Merriam-Webster's Collegiate Dictionary* (11th ed) (2011), defining "torture" as "the infliction of *intense* pain . . . to punish, coerce, or afford sadistic pleasure," and "brutal" as "grossly *ruthless* or unfeeling." (Emphasis added).

10

considerable amount," *ante*, at 9, appears facially reasonable, given that the phrase "considerable amount" is derived from a dictionary definition of the word "substantially." However, given the majority's refusal to consider how the other categories of conduct in OV 7 influence the meaning of the "conduct designed" category, the phrase "considerable amount" is of little assistance because it is rather vague in concept and too broad in application.

Instead, I would hold that the amendatory history of OV 7 evidences a legislative intent that the "conduct designed" category include only conduct that is of the same class as the other three categories of conduct listed in OV 7. Working from that premise, I would further hold that a defendant should only be assessed points under the "conduct designed" category of OV 7 if a preponderance of the evidence shows that the defendant *intended* to substantially increase the victim's fear and anxiety. Finally, I would hold that only conduct that is intended to generate extreme or intense fear and anxiety beyond the fear and anxiety that is necessary to commit the crime at issue satisfies the "substantially increase" language in OV 7 because only extreme or intense fear and anxiety falls within the same class as sadism, torture, and extreme brutality.

## IV. APPLICATION

### A. APPLICATION TO *HARDY*

In *Hardy*, defendant first pointed a shotgun at the victim while committing a carjacking. When the victim failed to immediately comply with defendant's orders, defendant racked the shotgun. Thus, the question is whether racking the shotgun was intended to subject the victim to extreme or intense fear and anxiety.

As the majority explains, to commit a carjacking, a defendant must use (1) "force or violence," (2) "the threat of force or violence," or (3) put the victim "in fear." MCL 750.529a(1). Thus, the crime of carjacking itself entails the use of force, a threat of force, or the installation of fear in the victim. Defendant accomplished this by threatening the victim with violence by pointing the shotgun at the victim and then racking the shotgun.

Although it is true that "merely displaying the weapon or pointing it at the victim would have been enough to issue a threat," *ante* at 13, the question is whether the singular act of racking the shotgun was sufficient to instill *extreme* or *intense* fear *beyond the fear and anxiety that is necessary to commit the carjacking*. Admittedly, racking a shotgun is intended to increase the victim's fear, given that the act gives the impression that the gun is ready to fire. However, I cannot reasonably conclude that a person who is staring down the barrel of a shotgun feels any more comfort than a person who is staring down the barrel of a shotgun that was racked in their presence. Such a view of these situations assumes that the shotgun in the first situation was not racked at some time before the defendant pointed it at the victim. This is not a logical assumption because any person who finds himself or herself on the wrong end of a shotgun is likely to assume that the gun is ready to fire and therefore "fear imminent, violent death," *ante* at 14, regardless of whether he or she observed the defendant rack the shotgun.

Accordingly, although racking a shotgun while in the victim's presence is certainly deplorable conduct, I believe that in the context of a carjacking racking a shotgun is only minimally more fear-inducing than pointing a shotgun at a victim at close range. Therefore, defendant's conduct was not intended to "substantially increase" the

12

victim's fear because it was not sufficient to instill *extreme* or *intense* fear *beyond the fear and anxiety that is necessary to commit the carjacking*.[5]  Therefore, I would hold that the trial court clearly erred by assessing 50 points under OV 7 in *Hardy*.

## B.  APPLICATION TO *GLENN*

In *Glenn*, defendant struck both employees on the head with what appeared to be a sawed-off shotgun in the course of committing an armed robbery.  When defendant struck the second employee on the head, defendant had already obtained the money and both employees were wholly compliant.  Striking the second employee once defendant had already effectuated the crime evidenced that defendant was not merely threatening physical harm, but was in fact willing to physically harm the employees despite their compliance.  This additional use of force during the robbery was entirely unnecessary for the crime's successful commission and was thus intended to "substantially increase" the victims' fear and anxiety by subjecting them to intense or extreme fear and anxiety beyond what was necessary to commit the offense.  Therefore, I agree with the majority that the trial court did not clearly err when assessing 50 points under OV 7 in *Glenn.*

---

[5] For an example of conduct that would satisfy the "conduct designed" category under OV 7, consider the conduct in *People v Mattoon*, 271 Mich App 275, 276-278; 721 NW2d 269 (2006), where the defendant, who was convicted of kidnapping, felonious assault, and possession of a firearm during the commission of a felony, held his girlfriend at gunpoint for over 9 hours, repeatedly threatened to kill her, removed bullets from the gun and told her that they had her name on them, and told her to think about what it would be like when her son came home to yellow tape around the house.

## V. CONCLUSION

I disagree with the majority because it errs by holding that the phrase "conduct designed to substantially increase the fear and anxiety of the victim" must be interpreted independently and without reference to the other three categories under which OV 7 can be scored. In doing so, the majority fails to consider the "conduct designed" category in light of the entirety of the OV 7 statute, the sentencing guidelines statutory scheme, and the history of the OV 7 statute. Instead, I would hold that to be properly scored under OV 7, "conduct designed to substantially increase the fear and anxiety of the victim" must rise to the same class as sadism, torture and excessive brutality, and that the defendant's conduct must have been intended to cause a victim intense or extreme fear and anxiety beyond the fear and anxiety that is necessary to commit the crime at issue.

Michael F. Cavanagh