PEOPLE v HUNT

Docket No. 292639. Submitted October 13, 2010, at Detroit. Decided
October 19, 2010, at 9:05 a.m.

A Wayne Circuit Court jury convicted Christopher R. Hunt of
kidnapping, two counts of assault with a dangerous weapon, and
possession of a firearm during the commission of a felony. The
charges arose from a kidnapping at gunpoint in which defendant
participated with two other men and beatings that occurred
during the course of events. The court, Timothy M. Kenny, J.,
sentenced defendant to concurrent terms of 15 to 30 years for
kidnapping and 1 to 4 years for felonious assault, plus a consecu-
tive 2-year term for felony-firearm. The sentence was based in part
on a score of 50 points for offense variable (OV) 7, which involves
aggravated physical abuse, including sadism, torture, or excessive
brutality. Defendant appealed, challenging his sentencing.

The Court of Appeals *held*:

1. Under MCL 777.37(1)(a), 50 points must be assessed for OV
7 when a victim was treated with sadism, torture, or excessive
brutality or conduct designed to substantially increase the fear
and anxiety a victim suffered during the offense. Scores of 50
points for OV 7 have been upheld when the defendant committed
specific acts of sadism, torture, or excessive brutality. However,
defendant's actions alone did not qualify as sadism, torture, or
excessive brutality because he did not himself commit, take part
in, or encourage others to commit such acts. The testimony
established that defendant had a gun at various times throughout
the crime but did not take part in the beatings or fire a weapon,
although others involved did. Defendant did not participate in
tying up the victims and did not encourage any of the other
perpetrators to act as they did. His participation in helping to
move the victims also did not rise to the level of sadism, torture, or
excessive brutality. Transportation of a victim to a place of greater
danger may be scored under OV 8, MCL 777.38(2)(b), but zero
points must be assessed for OV 8 when the sentencing offense is
kidnapping. The trial court should have assessed zero points for
OV 7.

2. Sentencing must be based on accurately scored sentencing guidelines. Had the guidelines been properly scored, defendant's recommended minimum sentence range for kidnapping would have been 9 to 15 years instead of 11.25 to 18.75 years. Although defendant's minimum sentence of 15 years was within the correctly calculated range, it was at the top of that range rather than the middle. The minimum sentence of 15 years showed an intent by the trial court to sentence defendant in the middle of the range. Defendant is entitled to resentencing.

Convictions affirmed, sentences vacated, and case remanded for resentencing.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 7 — SADISM, TORTURE, OR EXCESSIVE BRUTALITY.

Fifty points must be assessed under the sentencing guidelines for offense variable 7 (aggravated physical abuse) when a victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense; score of 50 points is appropriate when the defendant committed specific acts of sadism, torture, or excessive brutality; only the defendant's actual participation should be scored, however, and 50 points should not be assessed for sadism, torture, or excessive brutality if the defendant did not commit, take part in, or encourage others to commit such acts (MCL 777.37[1][a]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Lori Baughman Palmer*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for defendant.

Before: MURRAY, P.J., and K. F. KELLY and DONOFRIO, JJ.

PER CURIAM. Defendant appeals as of right his jury trial convictions of kidnapping, MCL 750.349, two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm),

MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 15 to 30 years for kidnapping and 1 to 4 years for felonious assault, and a consecutive 2-year term for felony-firearm. Defendant's sole challenge on appeal is his sentencing. We affirm defendant's convictions; however, because the trial court erred when it assessed 50 points for offense variable (OV) 7, we vacate defendant's sentence for kidnapping and remand for resentencing in accordance with this opinion.

### I. FACTS

This case arises from a kidnapping at gunpoint that occurred on June 7, 2008, in Detroit. On the date in question, Sierra Burton and her ex-boyfriend, Jonathan Broadus, were at a house on Audubon in Detroit. Burton testified that at about 6:00 p.m., during a child's birthday party, defendant, Richard Harden, and Darnell Chapell ran into the house with guns. Defendant and Chapell had handguns, and Harden had a long gun or assault rifle. According to Burton, all three men directed Burton and Broadus to go downstairs at gunpoint. Broadus's testimony was conflicting with regard to whether defendant was present at this time and, if he was present, whether he had a gun. Harden and Chapell then began asking about the whereabouts of Harden's distinctive purple Caprice Classic, which had been stolen. It appeared to Burton that Broadus seemed to know about the missing Caprice. Burton testified that at some point she attempted to use a cell phone, but defendant "snatched" it. Burton also stated that when defendant took the phone, defendant's gun was "just in his hand" and not pointed at her, though she felt scared. Broadus testified that Harden hit him with the assault rifle.

After about two minutes in the basement, the men led Burton and Broadus out of the basement and then out of the house. The men walked Burton and Broadus to Chapell's apartment in a house at the corner of Audubon and Warren. Inside, the men kept asking where the car was in an "aggressive" manner, and Burton perceived it as a threat. Harden did most of the questioning. After Broadus told the men something about the car, the men escorted them outside into two cars. Defendant, Chapell, and Harden all had their guns at this time. They drove to a house on Lakeview. When they arrived, about five strangers were on the porch. Harden jumped out of the car and asked them about the location of his car. Defendant stayed in the car. Harden then started shooting at a boy on the porch, and the boy ran inside. No one else fired shots or got out of the cars.

Both cars left the house and drove to an abandoned house on Beaconsfield, about three minutes away. Everyone went inside, but then Harden and defendant went to get another car. Burton, Broadus, and Chapell waited in the vacant house for them to return. Chapell still had his gun. After about 30 minutes, defendant and Harden returned. Burton, Broadus, defendant, Chapell, and Harden all piled into a white truck and returned to Chapell's apartment on Audubon. Harden ran into the apartment, while defendant and Chapell stayed in the truck with Burton and Broadus. While Burton did not see defendant or Chapell with a gun at this time, she did not feel free to leave because Chapell said, "Don't move." Harden then came out and told them to come inside. When they went in, Harden again starting asking Broadus about the car. Harden tied Broadus's and Burton's hands behind their backs with a telephone cord, shoestrings, and an extension cord. Broadus answered questions about the car, but

then a man named "Black" came in and beat Broadus with his fists. Broadus said that he had seen "Monk" driving the car.

Next, defendant, Harden, and Chapell took Burton and Broadus on a ride to another street looking for Harden's stolen Caprice, a man named Courtney Gillon, known as "Monk," or Gillon's house. They did not find Gillon's house and returned to Chapell's apartment. While there, Chapell called Broadus's and Burton's families and told them to tell their parents that they were all right. Chapell and Broadus did so, speaking to Broadus's nephew. At this point Burton and Broadus were still tied up and Harden still had a gun. After about an hour or two, Harden and Chapell untied them. Defendant was sitting at a table. Black then walked Burton to Black's house around the corner on Courville, where they waited for defendant, Harden, and Chapell to bring Broadus.

Defendant, Harden, Chapell, and Broadus went to pick up Michael Webster and his sister, Unique Webster, from a house on Drexel. When they got to Michael Webster's house, Harden held the gun to Broadus's back and they walked into the house. One of the other men was also carrying a gun. The assailants forced the Websters and Broadus into a Suburban. Later, they all returned to the house on Courville. Unique Webster was Gillon's girlfriend, and she said that Gillon lived at a house on Bluehill. Everyone got back into the Suburban and drove to Bluehill.

At the house on Bluehill, Chapell and Harden walked Unique Webster to the side door, where she knocked. Defendant stayed in the car with Burton, Broadus, and Michael Webster. Gillon answered the door. Harden then "[g]rabbed him by his arms" and "snatched him out [of] the house." Chapell and Harden were holding handguns

and fired shots into the ground. They pushed Gillon into the truck with defendant, Burton, and Broadus.

Next, they returned to Chapell's apartment, and someone phoned Black. Black returned, and he, Chapell, and Harden beat Gillon using "[s]hoestrings, telephone cords, extension cords, chairs." The beating lasted about 30 to 45 minutes. Defendant was in the other room with Burton, Broadus, Michael Webster, and Unique Webster. Defendant did not appear to be armed at this time, but again, neither Burton nor Broadus felt free to leave because Harden and others were still armed. At some point the beating began again in the other room, and they heard Gillon screaming and then gunshots inside the apartment. Shortly thereafter, Black left.

Finally, after 45 minutes to an hour, Burton and Broadus heard the sound of police sirens from the street below. Harden tried to conceal his gun in the ceiling tiles and told the victims to say that they were family members and pretend that they were there willingly. Burton was in the same room as Broadus, Michael Webster, and Gillon. When the police knocked, defendant was in another room or apartment. Harden and Chapell left. Defendant then left with Unique Webster. No one opened the door, and police officers used a battering ram to get inside. Burton and Broadus told the police what happened, explaining that they had been kidnapped by defendant, Harden, and Chapell.

For his participation in the incident, the jury convicted defendant of kidnapping, two counts of felonious assault, and felony-firearm. Defendant now appeals as of right but only challenges his sentencing.

## II. STANDARD OF REVIEW

When scoring the sentencing guidelines, "[a] trial court determines the sentencing variables by reference

to the record, using the standard [of proof] of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Interpretation and application of the sentencing guidelines is a question of law, reviewed de novo. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008).

### III. ANALYSIS

Defendant argues that he is entitled to resentencing because the trial court erred when it assessed 50 points for OV 7. MCL 777.37 provides:

> (1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ......................................................... 50 points
>
> (b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ..................................................................... 0 points
>
> (2) Count each person who was placed in danger of injury or loss of life as a victim.
>
> (3) As used in this section, "sadism" means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification.

The trial court assessed 50 points for OV 7 because (1) the victims were moved from location to location, (2) a substantial beating was inflicted, designed to increase fear, and (3) one of the victims was beaten by multiple individuals. However, of these three factors, only the

first applies to defendant's role in the criminal enterprise. Defendant maintains that his role was minimal. The record seems to support his contention. While defendant was present and did have a gun at various times throughout the crime, at no time did defendant take part in a beating or fire a weapon. In fact, it appears that the testimony may have been conflicting with regard to whether defendant ever pointed a weapon at one of the victims. Burton testified that defendant, along with Harden and Chapell, ushered her and Broadus down the stairs at gunpoint when they first stormed the house on Audubon. Broadus waivered about whether defendant was present at the house on Audubon and, if defendant was present, whether he was armed. The record shows that defendant did not participate in tying up Burton and Broadus. Harden alone tied them up. Defendant did not strike any blows against Broadus. Black beat up Broadus. Later, when Gillon was kidnapped, defendant waited in the car while Chapell and Harden grabbed Gillon and fired shots into the ground. Then, at Chapell's apartment, Chapell, Harden, and Black beat up Gillon. Defendant, sitting at a table, did not participate. Importantly, there was no testimony that defendant ever encouraged Chapell, Harden, or Black in any of their behaviors. Thus, under these circumstances, Burton's testimony that defendant, along with Harden and Chapell, pointed his weapon at her at the first house was not sufficient to demonstrate acts that qualify as "sadism, torture, or excessive brutality" under OV 7.

Cases upholding scores of 50 points for OV 7 are distinguishable because they involve specific acts of sadism, torture, or excessively brutal acts *by the defendant*. In *People v Wilson*, 265 Mich App 386, 396-398; 695 NW2d 351 (2005), the defendant was convicted of assault with intent to commit great bodily harm less

than murder after inflicting a prolonged and severe beating that left lasting and serious effects. The defendant in that case choked the victim a number of times, cut her, dragged her, and kicked her in the head. After her hospital stay, the victim was in a wheelchair for three weeks and used a cane for another three weeks. In another case in which 50 points were assessed for OV 7, the defendant was convicted of kidnapping, felonious assault, and felony-firearm after he held the victim at gunpoint for nine hours, made her look down the barrel of a gun, repeatedly threatened to kill her and himself, and asked her what her son would feel like when he saw yellow crime tape around his mother's house. *People v Mattoon*, 271 Mich App 275, 276; 721 NW2d 269 (2006), and *People v Mattoon*, unpublished opinion per curiam of the Court of Appeals, issued October 18, 2007 (Docket No. 272549) (after remand). Similarly, in *People v Hornsby*, 251 Mich App 462, 468-469; 650 NW2d 700 (2002), the defendant pointed a gun at the victim, cocked it, and repeatedly threatened the victim and others in a store. In *People v Kegler*, 268 Mich App 187, 189-190; 706 NW2d 744 (2005), the defendant removed the victim's clothes, assisted with carrying him naked outside, and admitted that she wanted to humiliate him by leaving him outside naked. In *People v James*, 267 Mich App 675, 680; 705 NW2d 724 (2005), the defendant repeatedly stomped on the victim's face and chest and deprived the victim of oxygen for several minutes, causing him to sustain brain damage and become comatose. And in *People v Horn*, 279 Mich App 31, 46-48; 755 NW2d 212 (2008), the defendant terrorized and abused his wife with recurring and escalating acts of violence, including threatening to kill her.

Unlike the defendants in those cases, while defendant was present and armed during the commission of the crimes here, he did not himself commit, take part in,

or encourage others to commit acts constituting "sadism, torture, or excessive brutality" under OV 7. Moreover, unlike OV 1, OV 2, and OV 3, OV 7 does not state that "[i]n multiple offender cases, if 1 offender is assessed points for [the applicable behavior or result], all offenders shall be assessed the same number of points." See MCL 777.31(2)(b), MCL 777.32(2), MCL 777.33(2)(a). For OV 7, only the defendant's actual participation should be scored. In this case, the record reflects that defendant's actions alone did not qualify as "sadism, torture, or excessive brutality" under OV 7.

And the movement of the victims did not justify a 50-point score for OV 7. Transportation to a place of greater danger is appropriately scored under OV 8, but must be given a score of zero points when, as here, the sentencing offense is kidnapping. MCL 777.38(2)(b). The trial court's comments included the OV 8 factor in its discussion of OV 7. There was testimony that defendant held and pointed a gun. However, again, the use of a gun is inherent in the felony-firearm and felonious assault crimes, and defendant, unlike the others, did not fire the gun, threaten to fire it, or hit the victims with it. For a good portion of the time, the victims who testified did not see him holding a gun. For all these reasons, defendant's own conduct toward the victims did not qualify as "sadism, torture, or excessive brutality" or justify a score of 50 points on OV 7.

Finally, defendant is correct that resentencing is required even though the minimum sentence he received for the kidnapping conviction, 15 years, falls within the recommended minimum sentence range calculated under the guidelines after the correction. Sentencing must be based on accurately scored guidelines. MCL 769.34(10). Without the 50-point score for OV 7, defendant's offense variable level and prior

record variable level place him in the D-III cell of the sentencing grid for offense class A, with a recommended minimum sentence range of 9 to 15 years, rather than in the D-V cell, with a recommended minimum sentence range of 11.25 to 18.75 years. MCL 777.62. When the guidelines are correctly scored, a minimum sentence of 15 years is at the top rather than the middle of the guidelines range. The sentence given by the trial court showed an intent to sentence defendant in the middle of the minimum sentence range. In *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006), the Court mandated resentencing in a similar situation, since the sentence imposed "stands differently in relationship to the correct guidelines range than may have been the trial court's intention." *Francisco* also stated that "when a trial court sentences a defendant in reliance upon an inaccurate guidelines range, it does so in reliance upon inaccurate information." *Id.* at 89 n 7. Defendant is entitled to resentencing.

### IV. CONCLUSION

Because the trial court erred when it assessed 50 points for offense variable 7, we vacate defendant's sentence for kidnapping and remand for resentencing in accordance with this opinion.

Affirmed in part, vacated in part, and remanded for resentencing in accordance with this opinion. We do not retain jurisdiction.