# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID AARON BROWN,

      Defendant-Appellant.

UNPUBLISHED
September 8, 2015

No. 321590
Alpena Circuit Court
LC No. 13-005362-FC

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant, David Aaron Brown, pleaded guilty to armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), unlawful imprisonment, MCL 750.349b, and felonious assault, MCL 750.82. The trial court sentenced Brown to serve prison terms of 14 years and 309 days to 40 years for his armed robbery conviction, 5 to 20 years for his first-degree home invasion conviction, 5 to 15 years for his unlawful imprisonment conviction, and 2 to 4 years for his felonious assault conviction. The trial court also ordered Brown and his codefendants to jointly pay restitution of $10,612.20. Brown appeals his sentences by delayed leave granted. We affirm in part, reverse in part, and remand for resentencing.

## I. FACTUAL BACKGROUND

At his plea proceeding, Brown testified that he and four codefendants, Michael Bestwick, Mason Miller, Angela Schultz, and Leonard Ostrader, decided to break into the victim's home to steal marijuana and prescription medication. Brown and Miller went to the front door of the home with a bat while Bestwick went to the home's back door with a claw hammer. Miller pounded on the front door with the bat. When the victim opened the door, Brown and Miller rushed in and subdued the victim while Bestwick broke through the back door. The men tied the victim up. Brown and Miller then began searching the home for marijuana and prescription pills.

According to Brown, while he was searching the home, he heard the victim cry for help and heard Bestwick assault him with the hammer. He left the room he was in and saw the victim lying on the floor. Brown stated that Bestwick repeatedly struck the victim in the head and face with the hammer.

The trial court sentenced Brown under a *Cobbs*[1] agreement. As scored, Brown's sentencing guidelines range recommended a minimum sentence of 225 months to 375 months' imprisonment. The trial court sentenced Brown as stated above. Brown now appeals, challenging several of his guidelines assessments.

## II. STANDARDS OF REVIEW

This Court reviews de novo questions of statutory interpretation. *People v Osantowski*, 481 Mich 103, 107; 748 NW2d 799 (2008). A preponderance of the record evidence must support the trial court's assessments under the sentencing guidelines. *Id*. at 111. We review the trial court's findings of fact for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court clearly errs when we are definitely and firmly convinced that it has made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

## III. MULTIPLE OFFENDER CASES

Brown contends that the trial court erred when it assessed him points under offense variables (OVs) 1, 2, and 3 on the basis of Bestwick's use of the claw hammer as a stabbing weapon in a multiple offender case because he was not convicted of the exact same crimes as Bestwick. We disagree.

In multiple offender cases, if one offender is assessed points under OV 1, 2, or 3, the trial court must assess all offenders the same number of points. MCL 777.31(2)(b); MCL 777.32(2); MCL 777.33(2)(a); *People v Morson*, 471 Mich 248, 259; 685 NW2d 203 (2004). Brown relies on *People v Johnston*, unpublished opinion per curiam of the Court of Appeals, issued October 27, 2005 (Docket No. 254284), rev'd in part 478 Mich 903 (2007), to support his contention that the offender must be assessed on the same offense as the codefendant for these provisions to apply.

In *Johnston*, the three defendants' convictions arose from a "smash and grab" theft of jewelry. *Id*., slip op at 1. After a joint trial, the jury convicted defendant Villegas of unarmed robbery, conspiracy to commit unarmed robbery, and assault with a dangerous weapon. *Id*. at 2. The jury convicted defendant Chapman of unarmed robbery, conspiracy to commit unarmed robbery, two counts of assault with intent to do great bodily harm less than murder, and two counts of assault with a dangerous weapon. *Id*. The jury convicted defendant Johnston only of larceny from a person and conspiracy to commit larceny from a person. *Id*. This Court held that the trial court properly scored Johnston under OVs 1, 2, and 3 even though he was convicted of different offenses than Villegas and Chapman. *Id*.

The Michigan Supreme Court reversed. *People v Johnston*, 478 Mich 903; 732 NW2d 531 (2007). The Court reasoned that the assessments were improper

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

because each of these variables directs that for 'multiple offender cases,' if one offender is assessed points under the variable, 'all offenders shall be assessed the same number of points.' . . . . However, [Johnston] was the only offender convicted of larceny from the person and conspiracy to commit larceny from the person. Thus, his was not a "multiple offender case" for either of these crimes. [*Id*. at 904.]

Contrary to Brown's assertion, neither *Morson* nor *Johnston* held that the scored offenses must be the same between multiple offenders. Rather, *Johnston* held that codefendants must share common convictions. Here, Brown and Bestwick share the common convictions of unlawful imprisonment and first-degree home invasion. We conclude that the trial court properly determined that this case qualifies as a "multiple offender case" for the purpose of assessing OVs 1, 2, and 3.

## IV. OVS 1, 2, AND 3

First, Brown contends that the trial court improperly assessed 15 points for OV 1 and 5 points for OV 2 because the record in this case did not support those assessments. We disagree.

The trial court properly assesses 15 points for OV 1 if "the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). The trial court properly assesses 5 points for OV 2 if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d).

For the reasons stated above, not only was the trial court entitled to consider Beckwith's conduct when assessing Brown's sentencing variables, the trial court was required to assess Brown the same number of points as Beckwith. We agree that the fact that Beckwith actually struck the victim with the clawed end of the hammer is not part of the record in *this* case. However, anyone familiar with the appearance or use of a claw hammer can attest that the tapered rear head of the hammer can operate as a stabbing implement. It is undisputed that Beckwith possessed the hammer and struck the victim with it. The statutory language requires that the weapon is a stabbing weapon and that Beckwith "threatened with" the hammer and "possessed *or* used" it. We conclude that a preponderance of the evidence supported the trial court's assessments.

Second, Brown contends that the trial court improperly assessed OV 1 and 2, as well as OV 3, on the basis of Beckwith's conduct. Again, we disagree.

The trial court properly assesses 25 points for OV 3 if the victim suffered a life-threatening or permanently incapacitating injury. MCL 777.33(1)(c). As we have previously discussed, the trial court was entitled to consider Beckwith's conduct when scoring OV 3. Brown testified that Beckwith repeatedly hit the victim in the face and head with the hammer. Brown's PSIR indicates that the victim underwent surgery to "repair the piece of skull removed from his head." This supported the trial court's finding that the victim suffered a life-threatening injury. We conclude that a preponderance of the evidence supported the trial court's assessment of OV 3.

## V. OV 4

Brown contends that no record evidence supported the trial court's assessment of 10 points for OV 4. We agree.

The trial court must score 10 points for OV 4 if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). However, the trial court improperly scores OV 4 if there is no record evidence of any psychological injury to the victim because the trial court may not assume that an injury occurred. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012).

In this case, the trial court found that the victim suffered a psychological injury on the basis of the court's personal observations of the victim's state of agitation while the victim gave statements at other court appearances. The victim did not give any statements in *this* case, and the victim's appearance is not part of the record. We conclude that the trial court clearly erred by finding that the victim suffered a serious psychological injury because the record is devoid of any evidence on this point.

## VI. OV 7

Brown contends that the trial court erred by assessing 50 points under OV 7 because Brown did not take part in the brutal, sadistic treatment of the victim. We agree.

The trial court properly assesses 50 points for OV 7 when "[a] victim was treated with sadism, torture, or excessive brutality . . . ." MCL 777.37(1)(a). The Legislature has defined "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).

It is undisputed that Beckwith engaged in sadistic conduct. Beckwith stated to police that he repeatedly struck the victim, that he enjoyed doing it, and that he contemplated killing the victim. As a result of the victim's head injuries, he was subjected to extreme and prolonged pain, including at least one surgery.

However, Brown did not take part in the victim's brutal beating. Unlike OVs 1, 2, and 3, there is no Legislative directive to assess all offenders equally under OV 7. *People v Hunt*, 290 Mich App 317, 326; 810 NW2d 588 (2010). To the contrary, "[f]or OV 7, only the defendant's actual participation should be scored." *Id.*

In *Hunt*, the defendant participated in a series of kidnappings. *Id.* at 319. The defendant and his codefendants drove the victims to an abandoned house. *Id.* at 320. At one point, the codefendants beat one of the victims for 30 to 45 minutes. *Id.* at 322. The defendant was in another room with other kidnapping victims, who testified that they could hear screaming. *Id.* At another point, the defendant was sitting at a table while other men beat the victim, but he did not participate or encourage the men. *Id.* at 324.

-4-

This case is similar to *Hunt*. In this case, the trial court found that Brown "set matters in motion" that allowed Beckwith to engage in brutal conduct. However, the same could be said about the defendant in *Hunt*, who helped to kidnap the victims that other men beat and who even remained in the same room. Here, Brown was not in the same room when Beckwith beat the victim, and there is no indication that Brown encouraged Beckwith or personally participated in the beating. We conclude that the trial court improperly assessed 50 points under OV 7.

## VII. RESENTENCING IS REQUIRED

If a sentencing error results in a different sentencing guidelines range, the defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006). In this case, Brown's OV score was 105 points. Combined with his prior record variable score of 65 points, the guidelines recommend a minimum sentence of 225 to 375 months' imprisonment. MCL 777.16y; MCL 777.62. However, reducing Brown's OV score by 60 points results in an OV score of 45 points. At that score, Brown's recommended minimum sentence would be 126 months to 210 months' imprisonment. Because the sentencing errors in this case would result in a different guidelines range, we conclude that we must remand for resentencing.

## VIII. RESTITUTION

Brown contends that the trial court erred by ordering him to pay restitution jointly with his codefendants because Brown did not cause the victim's injuries. We disagree.

Crime victims have the right to restitution. Const 1963, art 1, § 24; *People v Grant*, 455 Mich 221, 229; 565 NW2d 389 (1997). The purpose of restitution is to "allow crime victims to recoup losses suffered as a result of criminal conduct." *Id.* at 230. The Crime Victims' Rights Act, MCL 780.751 *et seq*, determines whether a sentencing court's restitution order is appropriate. *Id*. at 233. Restitution is mandatory, not discretionary. MCL 780.766(2). The Act is remedial in character and courts should liberally construe it to effectuate its intent. *People v Fawaz,* 299 Mich App 55, 65; 829 NW2d 259 (2012).

The trial court must consider "the amount of loss sustained by any victim as a result of the offense." MCL 780.767(1). However, restitution may not include losses that were not part of the factual foundation of a defendant's conviction. *People v McKinley*, 496 Mich 410, 419; 852 NW2d 770 (2014). The trial court may only order restitution "to any victim of the defendant's course of conduct *that gives rise to the conviction . . . .*" *Id*. at 419. The trial court may not base a restitution award on uncharged conduct. *Id*. at 420.

The term "gives rise to" means " 'to produce or cause.' " *Id*. at 419, quoting *Random House Webster's College Dictionary* (2000). Accordingly, "a victim for whom restitution is assessed need also have a connection to the course of conduct that gives rise to the conviction." *Id*. at 420. There must be a direct, causal relationship between the convicted offense and the amount of restitution awarded. *Id*. at 421. Cause in fact exists when a person's injuries would not have occurred but for another's conduct. *Skinner v Square D Co*, 445 Mich at 153, 162-163; 516 NW2d 475 (1994).

This case does not concern injuries based on uncharged conduct that occurred before or after the conviction. Here, Brown's conduct included breaking into the victim's home and

subduing him so that the home could be searched for drugs. While the home was searched, the victim was injured. There was a direct, causal relationship between Brown's conduct and the victim's injury. Had Brown not taken part in an armed robbery and home invasion, the victim would not have been injured. Stated differently, while Brown's conduct was not *the* cause of the victim's injury, it was certainly *a* cause.[2] We conclude that the trial court properly ordered Brown to pay restitution in this case.

We affirm in part, reverse in part, and remand for resentencing. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

---

[2] For example, if the victim had suffered a heart attack from the fright of having his door broken in, it could not be said that Brown alone—rather than in combination with genetic predisposition for heart disease or a poor diet—caused the victim's injury. But it would be fair to say that the heart attack would not have occurred but for the home invasion.