# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSHUA JAMALLE MITCHELL,

      Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No. 334244
Jackson Circuit Court
LC No. 15-005418-FC

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, assault with intent to rob while armed, MCL 750.89, possession of a firearm during the commission of a felony, MCL 750.227b, and conspiracy to commit assault with intent to rob while armed, MCL 750.157a and MCL 750.89. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 15 to 30 years each for the armed robbery, assault with intent to rob while armed, and conspiracy convictions, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. For the reasons explained in this opinion, we vacate defendant's conviction and sentence for assault with intent to rob while armed, affirm his remaining convictions, and remand for resentencing.

Defendant's convictions arise from his participation in the robbery of a BP gas station in Jackson, Michigan. Evidence at trial indicated that four men—John Weidman, Darius Spencer, Trevante Belcher, and defendant—conspired to rob the gas station. Weidman testified pursuant to a plea agreement whereby he pleaded guilty to the armed robbery, assault with intent to rob while armed, and conspiracy charges, in exchange for his testimony against his codefendants and dismissal of the felony-firearm charge and the habitual offender enhancement.

Weidman testified that on the night of the offense, he was riding in a gray Kia with Spencer, defendant, and Belcher. Spencer was driving the vehicle and defendant was the front-seat passenger. Weidman and Belcher were in the backseat. Spencer proposed that they rob the BP gas station, and defendant stated that he agreed with Spencer. The manager at the gas station knew defendant and Spencer, so it was decided that Weidman would commit the robbery. Defendant provided Weidman with a gun to use during the robbery. After being dropped off a short distance from the gas station, Weidman walked to the gas station and went inside wearing a mask and gloves. He aimed the gun at the clerk and asked for the money. The clerk put his

-1-

hands up and said the money was in the cash register. When Weidman "cocked" the gun, a bullet fell out, onto the floor. As Weidman looked for the bullet, the clerk ran out the door. Unable to find the bullet, Weidman ran in the opposite direction and called Spencer to come pick him up. The gray Kia with the same passengers sitting in the same configuration picked Weidman up a couple of minutes later.

As the Kia was driving away from the vicinity of the gas station, a police car began to follow it and eventually activated its lights after the Kia rolled through a stop sign. The Kia accelerated and continued for a while, but it eventually stopped and one of the police officers saw two people exit the front and rear doors of the passenger side and flee. The officer took off on foot chasing the suspect who exited from the rear passenger seat. That suspect was eventually apprehended by another officer and identified as Weidman. A different police officer subsequently observed the Kia, which had been driven away to a different location, in the same general area, with its driver's door open and a person running away from the vehicle. The officer chased and apprehended the person, who was identified as defendant.

Police officers recovered a .9 millimeter bullet from inside the BP gas station. In the Kia, police collected a mask and a pair of gloves, a Michigan driver's license for defendant, a small bag of marijuana, and rental car paperwork for the Kia that revealed it had been rented in Radcliff, Kentucky. A chrome plated Taurus .9 millimeter handgun with black grips was found in the backyard of a residence in the area where the officers had been chasing the suspects. DNA analysis of a swab taken from the gun's magazine matched defendant's DNA profile. Police determined that the gun had been reported lost out of Kentucky. Telephone records for the number Weidman called on the night of the robbery indicated that the phone had been in Kentucky the day before the robbery, and that the phone moved from Kentucky, to Indiana, to Michigan, ultimately using a cell tower in Jackson on the day of the robbery.

According to the victim, Spencer came into the gas station after the robbery and offered the victim $1,500 if he would call the prosecutor or the police and tell them that defendant was not involved in the robbery and to not testify. The victim testified that Spencer said he was there on behalf of defendant. A customer in the store overheard Spencer try to bribe the victim.[1] The jury convicted defendant as noted above.

## I. EVIDENCE CONCERNING THE BRIBE

On appeal, defendant first argues that he was denied a fair trial by the admission of the evidence that Spencer attempted to bribe the victim to say that defendant was not involved in the robbery. Defendant asserts that this evidence was inadmissible because there was no evidence connecting this bribe attempt to him. Because defendant did not object to the challenged

---

[1] Spencer was ultimately apprehended at a residence owned by defendant's father. Belcher was located in Kentucky. Spencer was tried separately and convicted by a jury of armed robbery, assault with intent to rob while armed, conspiracy to commit assault with intent to rob while armed, felony-firearm, felon in possession of a firearm, MCL 750.224f, and bribing a witness, MCL 750.122(7)(b).

testimony at trial, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *People v Fackelman*, 489 Mich 515, 537; 802 NW2d 552 (2011).

"Generally, all relevant evidence is admissible, and irrelevant evidence is not." *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), citing MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is subject to exclusion if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.

Evidence of a defendant's efforts to influence an adverse witness is generally relevant and admissible because it is conduct that can show consciousness of guilt. See, e.g., *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). In *People v Salsbury*, 134 Mich 537, 569; 96 NW 936 (1903), the Court recognized "the rule . . . that evidence that a defendant has attempted to suppress testimony or induce perjury is admissible, and tends to show guilt." This rule also applies "to an attempt made by another at the instigation of a defendant;" but before such evidence may be considered, "it must be made to appear that the effort was made at the instigation of the defendant, or with his consent or approval, or at least knowledge or expectation that it had been or would be made." *Id*. at 569-570.

In this case, contrary to defendant's argument that there is no connection between him and the attempted bribery, the prosecution presented evidence of recorded jail conversations between Spencer and defendant, which support an inference that Spencer attempted to bribe the victim at defendant's behest.[2] Although defendant disputes the interpretation given to various statements made in those conversations, those disputes involved questions of fact for the jury to resolve. Because evidence was presented that connected the bribe attempt to defendant, and because defendant has failed to show that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, defendant has failed to show that admission of the evidence constituted plain error.[3]

## II. EVIDENCE CONCERNING DEFENDANT'S PRIOR POSSESSION OF THE GUN

---

[2] For instance, defendant told Spencer to "talk to the guy," to "get with homey," and to be "very convincing." "Tell him he's got to look out for me, he has to come through" and "[a]ll he's gotta do is talk to the prosecutor." In the context of this conversation defendant mentioned "Samantha," but the pronoun "he" is used as well as the phrase "the guy," which support the conclusion that "Samantha" was a veiled reference to the male victim, who was known to go by "Sam."

[3] On appeal, defendant also argues that his trial counsel provided ineffective assistance by failing to object to the bribery evidence. However, because the evidence was admissible, defendant cannot establish that defense counsel was ineffective for failing to object to it. Any objection would have been futile. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Defendant next argues that he was denied a fair trial by the introduction of the victim's testimony that the gun used during the offense was the same gun the victim had previously seen in defendant's possession. Because defendant did not object to this testimony at trial, we review the issue for plain error affecting defendant's substantial rights. *Fackelman*, 489 Mich at 537.

The victim testified that the robber used a "silver and black, mostly silver" gun, which he had seen in defendant's possession "once or twice before." The victim testified that the gun previously possessed by defendant was the "same exact gun" used during the offense. This testimony was relevant to corroborate Weidman's testimony that defendant gave him the gun that he used during the robbery and, therefore, to connect defendant to the conspiracy and robbery.[4] MRE 401. See also *People v Houston*, 261 Mich App 463, 467; 683 NW2d 192 (2004) ("Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense.") (citation omitted). Further, because the testimony was relevant to, and highly probative of, defendant's involvement in the charged offenses, defendant has not established that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. Thus, defendant has failed to demonstrate plain error.

### III. DOUBLE JEOPARDY

Defendant argues, and plaintiff concedes, that his convictions of both armed robbery and assault with intent to rob while armed violate the double jeopardy prohibition against multiple punishments for the same offense. We agree. "Because assault with intent to rob while armed is a lesser included offense of armed robbery and neither crime contains an element the other does not, [a defendant] could not [be] convicted of both." *People v Gibbs*, 299 Mich App 473, 491; 830 NW2d 821 (2013). Accordingly, to remedy this violation, we vacate defendant's conviction and sentence for assault with intent to rob while armed. *Id*.

### IV. GUIDELINES SCORING

Defendant argues in both a brief filed by appointed appellate counsel and in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that he is entitled to resentencing because the trial court erred in scoring offense variables (OV) 7, 12, and 13 of the sentencing guidelines. Defendant preserved this issue by objecting to the scoring of OV 7 at sentencing, and by raising his challenges to the scoring of OVs 12 and 13 in a motion to remand. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). We review the trial court's factual determinations in scoring the guidelines for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial

---

[4] Because the victim's testimony indicated that the robber possessed a gun during the offense, Weidman testified that defendant gave him the gun before the robbery, and the victim identified the weapon as the "same exact gun" that he had previously seen defendant possess, this case is factually distinguishable from *People v Smelley*, 285 Mich App 314; 775 NW2d 350 (2009), vacated in part on other grounds 485 Mich 1023 (2010), and *People v Drake*, 142 Mich App 357; 370 NW2d 355 (1985). Therefore, defendant's reliance on those cases is misplaced.

court's factual findings "must be supported by a preponderance of the evidence." *Id.* "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

## A. OV 7

Defendant argues that the trial court improperly assessed 50 points for OV 7, which considers "aggravated physical abuse." MCL 777.37(1). A score of 50 points is warranted when "[a] victim was treated with sadism, torture, or excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a), as amended by 2002 PA 137.[5] When considering whether a defendant engaged in conduct designed to substantially increase a victim's fear or anxiety, "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444.

In this case, the trial court assessed 50 points for OV 7 because Weidman used the handgun in a manner designed to substantially increase the victim's level of fear. However, even if Weidman's conduct warranted points under OV 7, in a multiple offender situation, OV 7 does not mandate that all offenders receive the same score. *People v Hunt*, 290 Mich App 317, 326; 810 NW2d 588 (2010). To the contrary, for purposes of OV 7, "only the defendant's actual participation should be scored." *Id*. It is undisputed that defendant was not physically present during the robbery, and there is no evidence that defendant either assisted or encouraged Weidman to engage in conduct beyond the minimum required to commit the offense. Cf. *id*. at 325-326. Accordingly, the prosecution concedes, and we agree, that the trial court erred by assessing 50 points for defendant for OV 7 on the basis of Weidman's conduct during the offense. OV 7 should instead be scored at zero. See MCL 777.37(1)(b).

As scored by the trial court, defendant had a total OV score of 130 points, placing him at OV level VI with a guideline range of 171 to 356 months. See MCL 777.62; MCL 777.21(3)(a). Subtracting 50 points for OV 7, defendant has a total OV score of 80 points, placing him in OV level V with a guideline range of 135 to 281 months. See MCL 777.62; MCL 777.21(3)(a). Because the 50-point reduction for OV 7 affects defendant's guideline range, defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006); MCL 777.62.

## B. OV 12

Defendant also argues that the trial court improperly assessed five points for OV 12, which considers "contemporaneous felonious criminal acts." MCL 777.42(1). Pursuant to MCL

---

[5] MCL 777.37(1) was amended by 2015 PA 137, effective January 5, 2016. However, we consider the trial court's scoring decision under the version of the statute in effect on the date the crime was committed, which in this case was September of 2015. See MCL 769.34(2).

777.42(2)(a)(*i*) and (*ii*), a felonious criminal act is contemporaneous if the "act occurred within 24 hours of the sentencing offense" and the "act has not and will not result in a separate conviction." A score of 5 points is appropriate if either "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed," MCL 777.42(1)(d), or "[t]wo contemporaneous felonious criminal acts involving other crimes were committed," MCL 777.42(1)(e). If only "[o]ne contemporaneous felonious criminal act involving any other crime was committed," then OV 12 is properly scored at 1 point. MCL 777.42(1)(f).

In this case, the trial court scored OV 12 at 5 points. Based on the presentencing investigation report (PSIR) and the discussion at sentencing, it appears that the trial court concluded that defendant committed two contemporaneous felonious criminal acts: (1) fleeing or eluding a police officer and (2) assaulting, resisting, or obstructing a police officer. Defendant's arguments on appeal relate solely to fleeing or eluding. Specifically, defendant claims that he did not engage in fleeing and eluding because he was not the driver of the vehicle when the police activated their lights to stop the car. See MCL 750.479a(1); *People v Grayer*, 252 Mich App 349, 356; 651 NW2d 818 (2002) (noting that a foot chase and the defendant's actions after the vehicle pursuit ended could not form the basis of a fleeing or eluding conviction). As such, defendant argues that fleeing and eluding is not a contemporaneous felonious criminal act and it could not be scored under OV 12. Thus, according to defendant, OV 12 should be scored at 1 point because he has only one contemporaneous felonious criminal act.

However, even if defendant is correct that he should not be scored for fleeing and eluding, OV 12 was nevertheless properly scored at 5 points because resisting and obstructing a police officer is a crime against a person. See MCL 777.16d; MCL 750.81d; MCL 777.16x; MCL 750.479. Defendant does not dispute that he engaged in resisting and obstructing, and this conduct was properly scored under OV 12. Because defendant committed "[o]ne contemporaneous felonious criminal act involving a crime against a person," the trial court did not err by scoring OV 12 at 5 points. See MCL 777.42(1)(d).

## C. OV 13

Defendant also challenges the scoring of OV 13, which considers whether there is a "continuing pattern of criminal behavior." MCL 777.43(1). Defendant received 25 points for OV 13 because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). It appears that OV 13 was scored on the basis of the three offenses in this case—armed robbery, assault with intent to rob while armed, and conspiracy to commit assault with intent to rob while armed. On appeal, defendant argues that vacating his conviction of assault with intent to rob while armed renders the trial court's assessment of 25 points for OV 13 erroneous. Specifically, defendant argues that if his conviction of assault with intent to rob while armed is vacated, it will leave him with only two crimes against a person. Having vacated defendant's conviction for assault with intent to rob while armed, we agree that this conviction cannot be used to score OV 13.

However, we note that the PSIR indicates that defendant was arrested on August 30, 2012 for carjacking and unarmed robbery, both of which are crimes against a person. MCL 777.16y. Although these charges were dismissed, they may be used in scoring OV 13, provided that there

is a preponderance of the evidence establishing that the offenses took place and that defendant committed them. See MCL 777.43(2)(a) *People v Butler*, 498 Mich __; 865 NW2d 29 (2015); *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013). Because OV 13 was scored based on defendant's assault with intent to rob while armed conviction, it does not appear that the trial court considered defendant's charges for carjacking or unarmed robbery and, other than the basic fact of defendant's arrest, the PSIR does not contain any information relating to these offenses. In these circumstances, although we conclude that OV 13 may not be scored based on defendant's assault with intent to rob while armed conviction, our decision should not be read to preclude the prosecutor from introducing evidence on remand relating to the scoring of OV 13. On remand, the trial court may score OV 13 if a preponderance of the evidence demonstrates that defendant engaged in a pattern of felonious criminal activity. Otherwise, OV 13 should be scored at zero points.[6] See MCL 777.43(1)(g).

## V. STANDARD 4 BRIEF

Defendant raises additional issues in his Standard 4 brief, none of which warrant appellate relief.

### A. JUDICIAL MISCONDUCT

Defendant argues that the trial court's remarks when responding to a defense objection were prejudicial and denied him a fair trial. Because defendant failed to raise this issue below, it is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). In *People v Stevens,* 498 Mich 162, 164; 869 NW2d 233 (2015), our Supreme Court articulated the following standard for reviewing claims of judicial partiality:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial

---

[6] If OV 13 is scored at zero points, defendant's total OV score is reduced to 55 points, placing defendant at OV level III with a guideline range of 108 to 225 months. See MCL 777.62; MCL 777.21(3)(a).

"A party that challenges a judge for bias must overcome a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999).

Defendant has provided no coherent explanation of how the judge's lone comment, "Well if they're trying to buy him off," displayed bias. Viewed in context, the judge was not expressing a personal opinion that defendant or another person was trying to "buy him off," but rather was responding to defense counsel's objection regarding the relevancy of the testimony. The trial court did not make any additional comments on the subject. Further, the judge later instructed the jury that the court's rulings, questions, and instructions are not evidence. Additionally, the trial court instructed the jury as follows: "when I make a comment or give an instruction, I'm not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must not pay attention to that opinion." We presume that jurors follow their instructions. *Stevens*, 498 Mich at 177. And, the trial court's instruction was sufficient to alleviate any concerns about partiality that may have arisen from the trial court's isolated remark. See *id.* Considering the totality of the circumstances, it is unlikely that the judge's remark improperly influenced the jury by creating the appearance of advocacy or partiality against defendant. See *id.* at 164. Accordingly, we reject this claim of error.

## B. PROSECUTORIAL MISCONDUCT

Defendant also argues that the prosecutor's conduct denied him a fair trial. These claims are not properly before this Court because defendant fails to provide any record citations for the alleged instances of misconduct. See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Moreover, to the extent that we are able to ascertain the bases for defendant's arguments from the record, we find no grounds for relief. See *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010).

The prosecutor properly argued from the evidence and reasonable inferences arising therefrom that the victim was "threatened" and offered a bribe and a witness "saw that happen in the gas station." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Further, it was not improper for the prosecutor to argue during rebuttal argument that defense counsel's arguments about "the gloves" and Weidman's credibility should not affect the jury's verdict. A prosecutor may respond to issues raised by defense counsel, *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008), and attacking the credibility of a defense theory or commenting on the weaknesses in the defendant's theory does not shift the burden of proof, *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

Defendant was not prejudiced by the prosecutor's brief comment when responding to a defense objection that defendant may have been angry because the victim had previously kicked him out of the gas station store, especially considering that defense counsel ably established that the prior incident merely involved a littering matter, that defendant stopped the activity when asked, and that defendant never acted disrespectful toward the victim after that. See *Bennett*, 290 Mich App at 475.

Finally, the prosecutor's questions during redirect examination of Weidman, and the prosecutor's remarks during rebuttal argument, were responsive to defense counsel's cross-

examination and defense counsel's closing argument, during which defense counsel suggested that Weidman was offering untruthful testimony to get himself "off the hook" and avoid a mandatory two-year prison term for felony-firearm. The prosecutor pointed out, based on the evidence, that Weidman would be pleading guilty to three life offenses and that his attorney did not think that he was getting a "good deal."[7] The prosecutor properly questioned Weidman on redirect examination about the plea agreement and properly commented on his own witnesses' credibility during closing argument because defendant attacked Weidman's credibility. *Brown*, 279 Mich App at 135; *Thomas,* 260 Mich App at 455.

## VI. CONCLUSION

In sum, we vacate defendant's conviction and sentence for assault with intent to rob while armed. We affirm defendant's convictions of armed robbery, conspiracy to commit assault with intent to rob while and felony-firearm, but we vacate his sentences for those offenses and remand for resentencing.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle

---

[7] We are concerned by the prosecutor's characterization of felony-firearm as a "throw away charge" given that felony-firearm carries a mandatory consecutive two-year sentence. See MCL 750.227b. Although the prosecutor erred, defendant did not object at trial and he has not shown that this error was outcome determinative. See *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). The jury was informed of the terms of Weidman's plea at trial, and the jury was instructed that the lawyers' arguments are not evidence. The jury is presumed to follow its instructions. See *Stevens*, 498 Mich at 177. There was also considerable evidence of defendant's guilt, including evidence beyond Weidman's testimony. See *People v Smith*, 456 Mich 543, 555; 581 NW2d 654 (1998). On this record, defendant is not entitled to a new trial.