# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v DUPREE

Docket No. 161589. Argued on application for leave to appeal October 12, 2022. Decided March 21, 2023.

Robert M. Dupree was convicted following a jury trial in the Macomb Circuit Court of armed robbery, and he was sentenced by the trial court, Carl J. Marlinga, J., as a fourth-offense habitual offender to serve 360 to 720 months in prison. Defendant robbed a store with two accomplices in 2012. One of defendant's accomplices was armed. The armed robber held the store's clerk at gunpoint while defendant and the other accomplice bound the clerk with duct tape. The armed robber also struck the clerk with the gun during the robbery. Defendant and his accomplices fled after the robbery, but in 2014, defendant was charged with armed robbery in connection with the offense. Defendant's accomplices were not arrested or charged. Defendant appealed his conviction and sentence in the Court of Appeals, arguing, in part, that Offense Variable (OV) 1, MCL 777.31, and OV 2, MCL 777.32, had been wrongly scored. The Court of Appeals (BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.) affirmed defendant's convictions and sentence in an unpublished per curiam opinion. The Supreme Court ordered and heard oral argument on whether to grant defendant's application for leave to appeal or take other action. 508 Mich 1019 (2022).

In a per curiam opinion signed by Justices VIVIANO, BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court *held*:

Under MCL 777.31(1)(c), 15 points should be assessed for OV 1 when a firearm was pointed at or toward a victim. Five points should be assessed for OV 2, MCL 777.32(1)(d), when the offender possessed or used a weapon. There was no evidence that defendant was the offender who was armed during the robbery. Despite this fact, the circuit court relied on the multiple-offender provisions in MCL 777.31 and MCL 777.32 in assessing defendant 15 points for OV 1 and 5 points for OV 2. Under the multiple-offender provisions in these statutes, in cases involving multiple offenders, if one offender is assessed points for the OV, all offenders must be assessed the same number of points. The plain language of these provisions sets forth two conditions that must be satisfied before the provisions are triggered. The first condition is that the case must be a multiple-offender case. The second condition is that one offender is assessed points for possessing a weapon. Although the first condition was satisfied in this case, given that there were three offenders, the second condition was not; defendant was the only person charged with and convicted

of armed robbery, and no other offender was charged or convicted, let alone assessed points for possessing a weapon. Because defendant was the only person arrested and convicted, points could only be assessed under OVs 1 and 2 if defendant had possessed and/or used the weapon himself. There was no contention that defendant did so, so no points should have been assessed under those variables. The prosecution argued that, pursuant to caselaw, a court must first accurately determine a defendant's score without regard to other co-offenders by punishing an aider and abettor as though they were the principal. However, MCL 777.31(2)(b) and MCL 777.32(2) plainly require "1 offender [to be] assessed points" before "other offenders" are also assessed the same points. Under these provisions, defendant would be an "other offender," as a person who did not possess or use the weapon. The aiding-and-abetting statute, MCL 767.39, requires an aider and abettor to be "punished" as if they had directly committed the offense, but the effect of this statute is that aiders and abettors are to be charged with the same offense(s) as the principal—it does not speak to the scoring of the OVs. If MCL 767.39 were interpreted to require that, in the case of an aider and abettor, every OV must be scored in accordance with the conduct of the principal, this would be contrary to the plain language of several OVs. Because MCL 777.31 and MCL 777.32 clearly required that an "other offender" be assessed points before points could be assessed to defendant on a multiple-offender theory, the trial court should have assessed zero points to defendant for OVs 1 and 2. Defendant was entitled to resentencing because the Court's decision resulted in a 20-point reduction in his guidelines score and thus reduced the top end of his guidelines minimum sentence range. In all other respects, defendant's application for leave to appeal was denied.

Chief Justice CLEMENT, joined by Justice ZAHRA, dissenting, disagreed with the majority that MCL 777.31 and MCL 777.32 mandated that defendant could not be assessed points for OVs 1 and 2 because his co-offender, who had possessed a firearm, was not apprehended, convicted, or assessed points for these OVs. Instead, she would have concluded that even if a co-offender is not assessed points under a multiple-offender provision, the defendant may still be assessed points for an OV if they aided and abetted the conduct addressed by that OV. Under MCL 767.39, the distinction between an accessory and a principal is abolished in Michigan. Reading MCL 767.39 *in pari materia* with MCL 777.31 and MCL 777.32 led to the conclusion that a defendant could properly be assessed points under an OV if the defendant aided and abetted the specific conduct that served as the basis for scoring the OV. She cautioned that there was a distinction between a defendant's aiding-and-abetting conduct supporting a conviction and a defendant's aiding-and-abetting conduct supporting a specific sentence. If aiding and abetting only the crime itself justified scoring the OVs based on the principal's conduct alone, the aider and abettor would always be assessed the same points as the principal and there would be no need for OVs 1, 2, and 3 to contain a multiple-offender provision stipulating that a co-offender's conduct alone may justify the assessment of points. While a defendant may not be assessed points solely on the basis of a co-offender's conduct unless the OV states otherwise, a defendant may be assessed points when they aided and abetted the conduct that serves as the basis for scoring the OV—not because they merely aided and abetted the crime itself.

Justice BOLDEN did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED March 21, 2023

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                                      No. 161589

ROBERTO MARCELLO DUPREE,

Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH (except BOLDEN, J.)

PER CURIAM.

The issue in this case is the proper scoring of Offense Variables 1 and 2, which concern the possession or use of a weapon during the commission of a crime. Because there is no contention that defendant possessed a weapon during the offense at issue, and because no other offender was assessed points for either offense variable, both offense variables should have been scored at zero points. We reverse the judgment of the Court of Appeals in this regard and remand for resentencing.

## I. FACTS & PROCEDURAL HISTORY

Defendant and two accomplices robbed a store in Clinton Township on December 15, 2012. Only one of the three robbers was armed. The armed robber held the clerk at gunpoint while the other robbers bound him with duct tape and moved him to the back of the store. The armed robber struck the clerk with the gun during the robbery. The robbery was captured on surveillance video, which was viewed by Clinton Township Police Sergeant Deena Terzo. Sergeant Terzo described the armed robber as a thin Black man, probably in his late 20s, with no gloves or mask. Sergeant Terzo described the second robber as a heavy-set, light-skinned man with a shaved head wearing clear or yellow rubber gloves, and she described the third robber as a medium-built Black man wearing one white, dark-palmed glove. After the robbers fled, the clerk was able to call the police. A police-tracking dog followed the robbers' scent from the store, and officers found rubber gloves along the path of the robbers' flight.

A lead developed in 2014 implicating defendant, which ultimately led to a charge of armed robbery. While defendant was the only person arrested or charged, there was no contention that defendant had been the robber wielding the gun. A jury convicted defendant of the charged crime. The trial court sentenced defendant as a fourth-offense habitual offender, subjecting him to a mandatory 25-year minimum prison term pursuant to MCL 769.12(1)(a). However, defendant's guidelines minimum sentence range actually allowed for a longer minimum sentence. Specifically, defendant fell into the F-III cell of the Class A sentencing grid, yielding a minimum sentence range of 135 to 450 months in prison. The trial court sentenced defendant to 360 to 720 months (30 to 60 years) in prison, to be served concurrently with a sentence of 93 days for contempt of court.

## II. STANDARD OF REVIEW

This appeal concerns the interpretation and application of the sentencing guidelines, MCL 777.1 *et seq.*, which are legal questions that this Court reviews de novo, *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

## III. ANALYSIS

The circuit court assessed 15 points for Offense Variable (OV) 1 and 5 points for OV 2. Fifteen points should be assessed for OV 1 when "[a] firearm was pointed at or toward a victim," MCL 777.31(1)(c); five points are assessed for OV 2 when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon," MCL 777.32(1)(d). There is no evidence that defendant was the offender who wielded the gun in this robbery. Despite this fact, in assessing 15 points for OV 1 and 5 points for OV 2, the circuit court relied on the instruction contained in both OVs that "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." MCL 777.32(2); see also MCL 777.31(2)(b). On direct appeal, defendant challenged the scoring of OVs 1 and 2 on the basis that no other offender was assessed points for possessing a weapon. The Court of Appeals affirmed:

> The sentencing guidelines do not require that the other offenders be identified, charged, and convicted before any of the offenders may be assessed points under OV [1]. That defendant was the first, and might be the only, offender identified, charged, and convicted of the armed robbery is irrelevant for purposes of scoring OV 1. Further, a person convicted of committing a crime under an aiding-and-abetting theory "shall be punished as if he had directly committed such offense." MCL 767.39. Scoring the sentencing guidelines is an integral part of determining the punishment for one convicted of a crime.

> In the present case, the evidence established that the principal pointed a gun at the victim during the robbery, the jury convicted defendant of armed robbery as an aider and abettor, MCL 767.39 requires defendant to receive the same "punish[ment] as if he had directly committed [armed robbery,]" and OV 1 requires all offenders to receive the same score, without regard to whether the other offenders were prosecuted and convicted. [*People v Dupree*, unpublished per curiam opinion of the Court of Appeals, issued February 6, 2020 (Docket No. 344603), p 6.]

The Court of Appeals applied this same reasoning to OV 2 and held that the trial court did not err in scoring either variable. *Id*. We disagree.

The plain language of MCL 777.31(2)(b) and MCL 777.32(2) sets forth two conditions that must be satisfied before those provisions are triggered. The first condition is that the case is a "multiple offender case[]." The second condition is that "1 offender is assessed points" for possessing a weapon. Here, there were three offenders, which makes this a "multiple offender case," satisfying the first condition. However, defendant was the only person charged and convicted of armed robbery; no other offender has been charged or convicted, let alone assessed points for possessing a weapon. Therefore, the second condition, requiring another offender to have been assessed points for possessing a weapon, was not satisfied. Since defendant was the only person arrested, convicted, and assessed points under OVs 1 and 2, points could only be assessed under OVs 1 and 2 if he had possessed and/or used the weapon *himself*. There is no contention that he did so. Therefore, no points should have been assessed under OV 1 or OV 2.

The prosecutor argues that the Court of Appeals was correct to find that no other co-offenders need to be convicted before defendant is assigned points for OVs 1 and 2, citing *People v Libbett*, 251 Mich App 353; 650 NW2d 407 (2002). The defendant in *Libbett* was accurately assessed 15 points for OV 1 on the basis of the facts of the case,

4

while another co-offender had been erroneously assessed 5 points after entering a plea. *Id.* at 364, 367. The defendant argued that he should be assigned the same number of points as the other offender under MCL 777.31(2)(b). *Libbett*, 251 Mich App at 364. The *Libbett* Court rejected this argument, explaining:

> Although defendant would be correct if we were to read subsection 2(b) in isolation, we are not permitted to read the statute in that manner. Rather, this Court is required to construe a statute in light of the other statutory provisions in order to carry out the intent of the Legislature. [*People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999)]; *In re Messer Trust*, 457 Mich 371, 380; 579 NW2d 73 (1998). . . .
>
> When reading MCL 777.31 in its entirety, it is clear that the Legislature intended for the sentencing courts to first accurately determine the highest number of points that are to be scored under MCL 777.31(1)(a)-(e) and then to assess the same number of accurately scored points to multiple offenders in the same case under MCL 777.31(2)(b). [*Id.* at 366-367.]

The Court of Appeals concluded that the defendant's reading of MCL 777.31(2)(b) failed to give effect to MCL 777.31(1). *Libbett*, 251 Mich App at 367. The prosecutor here argues that, reading *Libbett* together with the aiding-and-abetting statute, a court must first "accurately determine" the score, without regard to other co-offenders, by punishing an aider and abettor as though they were the principal.

*Libbett* is inapposite here, where the issue is not whether MCL 777.31(1) and MCL 777.31(2)(b) conflict but, rather, whether MCL 777.31(2)(b) and MCL 777.32(2) are even triggered under these facts. The Court of Appeals' assertion that "[t]he sentencing guidelines do not require that the other offenders be identified, charged, and convicted before any of the offenders may be assessed points under [the] OV" ignores the clear statutory requirements of MCL 777.31(2)(b) and MCL 777.32(2). *Dupree*, unpub op at 6. Under those provisions, this defendant would be an "other offender[]," as the person who

5

did not possess or use the weapon. The provisions plainly require "1 offender [to be] assessed points" before "other offenders" are also assessed the same points.

The Court of Appeals and the prosecution also rely on the aiding-and-abetting statute, as does the dissent. The aiding-and-abetting statute says that a person convicted under an aiding-and-abetting theory "shall be punished as if he had directly committed such offense." MCL 767.39. The effect of this statute is that aiders and abettors are to be charged with the same offenses as principal offenders—but it does not speak to the scoring of the OVs. " '[S]pecific [statutory] provisions . . . prevail over any arguable inconsistency with the more general rule' " in a different statute. *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008) (citation omitted; first alteration in original). To ignore the specific statute relating to the scoring of the OVs in favor of the general aiding-and-abetting statute would be contrary to this canon of statutory interpretation.

Moreover, if MCL 767.39 works here as the Court of Appeals and the prosecution suggest, that would mean that every OV scored in the case of an aider and abettor would be scored in accordance with the conduct of the principal offender. This is contrary to the plain language of several OVs, some of which are silent on co-offender conduct and some of which explicitly instruct courts to rely on co-offender conduct. For example, OVs 1, 2, and 3, MCL 777.31 to MCL 777.33, have provisions for scoring "other offenders" according to the score of one offender in multiple-offender cases, but OVs 4 through 19, MCL 777.44 to MCL 777.49, do not offer guidance on whether co-offenders must be

6

assessed the same number of points as each other.[1]  In fact, OV 14 addresses the role of offenders who act in concert with others and requires the court to score the variable when the offender acted as a leader.  MCL 777.44(1)(a).  This requires the court to score OV 14 differently for some offenders than others in a multiple-offender situation.[2]  Here, MCL 777.31(2)(b) and MCL 777.32(2) clearly require that another offender be assessed points as a threshold matter before points may be assessed to this defendant on a multiple-offender theory.

The dissent's view of the aiding-and-abetting statute is more nuanced.  The dissent notes that the statute says aiders and abettors should be " '*prosecuted, indicted, tried and on conviction shall be punished* as if [they] had directly committed such offense.' " Quoting MCL 767.39 (emphasis added by the dissent).  Because the Legislature included the word "punished," the dissent reasons that the statute must have some application to sentencing.  According to the dissent, "it is appropriate to assess points under an OV if the defendant aided and abetted the specific conduct that serves as the basis for scoring the OV," and the multiple-offender provisions allow for co-offender conduct to provide the basis for OV scoring even if the defendant did not aid or abet that conduct.

---

[1] Some OVs are completely silent on multiple-offender cases, and some require a scoring difference if there *were* multiple offenders but do not address appropriate scores for aiders and abettors on the basis of the principal's conduct.  See MCL 777.31 *et seq*.

[2] MCL 777.44(2)(b) states that "[i]f 3 or more offenders were involved, more than 1 offender may be determined to have been a leader."  See *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014).  The implication of MCL 777.44(2)(b) is that when there are exactly two offenders, only one may be assessed 10 points for OV 14. Generally, OV 14 is clearly meant to ascribe greater culpability to some offenders than to others in multiple-offender situations.

7

Regardless of how we interpret and apply MCL 767.39, it remains significant that only defendant was convicted and sentenced in relation to the robbery. Even if defendant aided and abetted his codefendants in using a firearm to carry out the robbery, the language of OVs 1 and 2 does not support the contention that points may be assessed when only one defendant in a multiple-offender scenario is convicted and sentenced. Again, we may not ignore the plain language of the OV statutes in favor of applying the broader aiding-and-abetting statute, and to do so would be contrary to the general rules of statutory interpretation. *Miller*, 481 Mich App at 613. Further, we disagree with the dissent's application of MCL 767.39 in this case. The dissent directly addresses the use of a firearm during the robbery:

> Defendant was present during the armed robbery when his co-offender was using the weapon. After his co-offender pointed the gun at the victim, defendant helped to bind the victim with duct tape. Later, after defendant and his co-offender tried to escape, the co-offender hit the victim on the head with the firearm. Defendant's conduct constitutes aiding and abetting the use of the firearm.

MCL 767.39 assigns liability when a co-defendant "procures, counsels, aids, or abets" the conduct of another. What the dissent describes is defendant and the co-offender equally participating in the robbery, and the co-offender aiding and abetting the actions of defendant in perpetrating the robbery. But nothing in this description specifically amounts to defendant procuring, counseling, aiding, or abetting the co-offender's use of the firearm.

Finally, there is a difference in the phrasing of OVs 1 and 2, which lends some support to the prosecution's reading of OV 1. OV 1 assigns points for the "aggravated use of a weapon" and describes aggravated uses in the passive voice. Specifically, OV 1 refers to whether "[a] firearm was pointed at or toward a victim . . . ." MCL 777.31(1)(c). OV 2

8

assigns points on the basis of the "lethal potential of [a] weapon possessed or used" and describes each category of possession in the active voice. MCL 777.32(1). Specifically, OV 2 refers to whether "[t]he offender possessed or used a pistol . . . ." MCL 777.32(1)(d). One could argue that while OV 2's plain text ties possession to individual offenders, OV 1's plain text assesses points to all offenders based on the conduct of co-offenders. While there seems to be no dispute that defendant neither possessed a pistol nor pointed one at a victim, there also seems to be no dispute that his co-offender did. So, a firearm was indeed pointed at a victim.

However, relying on this argument would create a counterintuitive difference in the operation of OVs 1 and 2 and render MCL 777.31(2)(b) nugatory. OVs 1 and 2 have parallel functions and purposes. As discussed above, OV 1 assigns points on the basis of how a weapon is used (that is, whether it was used in a particularly dangerous manner), while OV 2 assigns points on the basis of the inherent dangerousness of a weapon. Additionally, each OV has a nearly identical provision for tying together conduct of co-offenders. MCL 777.31(2)(b); MCL 777.32(2). Given the similarities in purpose and structure of the OVs, it would be odd if use of the passive voice in OV 1 resulted in courts according a different meaning to the nearly identical language of the co-offender provisions in both OVs. At any rate, this reading would render MCL 777.31(2)(b) redundant. Generally, "[w]hen interpreting a statute, we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *People v Propp*, 508 Mich 374, 383; 976 NW2d 1 (2021) (quotation marks and citation omitted). But if the passive nature of OV 1's wording were sufficient to transmit liability among co-offenders, there would be no work left for MCL 777.31(2)(b) to do. This is a complicating piece of the puzzle of these statutes, but it does not change the result.

9

It is true that the proper interpretation of the statutory language precludes assessing points under OVs 1 and 2 against defendants whose co-offenders have evaded capture or are not brought to trial but allows scoring in cases where all offenders are sentenced and assessed points at the same time. This might strike some as an incongruous result. But this is a policy decision left to the Legislature, not the judiciary. See *Nieminen v Isle Royale Copper Co*, 214 Mich 212, 214; 183 NW 9 (1921) ("This language is simple, clear and unambiguous, and we think is controlling. Counsel argue and give illustrations that are persuasive that this construction of the statute may in certain instances work a great hardship. If it be conceded that the argument is true, still we think it one to be addressed to the legislature and not the court."). And the Legislature could easily amend the statute to address this issue. For example, it could make the multiple-offender provisions applicable if an offender "is *or could be* assessed points." See MCL 777.31(2)(b) and MCL 777.32(2).

Having concluded that the trial court erred in scoring OV 1 and OV 2, we must determine whether defendant is entitled to resentencing as a result. "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006); see also MCL 769.34(10). A scoring error requires resentencing when it results in a miscalculation of the sentencing range. *Francisco*, 474 Mich at 88. While defendant was subject to a mandatory minimum sentence of 25 years pursuant to MCL 769.12(1)(a), resentencing is still required when the upper range of the sentencing guidelines would change. In *Francisco*, this Court explained:

> Indeed, appellate correction of an erroneously calculated guidelines range will always present this dilemma, i.e., the defendant will have been given a sentence which stands differently in relationship to the correct guidelines

10

range than may have been the trial court's intention. Thus, requiring resentencing in such circumstances not only respects the defendant's right to be sentenced on the basis of the law, but it also respects the trial court's interest in having defendant serve the sentence that it truly intends. [*Francisco*, 474 Mich at 91-92.]

Here, defendant's minimum sentence range was 135 to 450 months. Because he was subject to a statutory mandatory minimum of 300 months (25 years), in effect, the range for his minimum sentence was 300 to 450 months. The circuit court imposed a sentence of 360 to 720 months (30 to 60 years). Defendant needs a reduction of one point to change his minimum sentence range from F-III to F-II in the Class A grid (126 to 420 months), and 19 points to move to F-I (108 to 360 months). This Court's decision results in a 20-point reduction. While defendant is still subject to the mandatory minimum, effectively setting the lower end of his sentencing range at 300 months, the top of the minimum sentence range is now significantly reduced. Resentencing is required. *Id*. at 92.

## IV. CONCLUSION

We conclude that the circuit court erred by assessing 15 points to defendant for OV 1 and 5 points for OV 2, and we reverse in part the judgment of the Court of Appeals. Because this Court's reversal reduces defendant's OV score by 20 points, resulting in a new minimum sentencing guidelines range, we remand to the circuit court for resentencing consistent with this opinion. In all other respects, defendant's application for leave to appeal is denied. We do not retain jurisdiction.

David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

11

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                             No. 161589

ROBERTO MARCELLO DUPREE,

      Defendant-Appellant.

_____

CLEMENT, C.J. (*dissenting*).

This case presents a textual wrinkle—given that certain offense variables (OVs) mandate that in multiple-offender cases all offenders should be assessed the same number of points, how should those OVs be scored when a defendant's co-offenders were not apprehended and therefore were never assessed points under those OVs? It is undisputed that defendant's armed co-offender, if apprehended and convicted, would have been assessed points for OVs 1 and 2, which concern aggravated use of a weapon and lethal potential of a weapon, respectively. Nevertheless, the majority opinion holds that defendant should not be assessed points for OVs 1 and 2 because he was unarmed and his armed co-offender, who remains at large, has of course not been assessed points for those OVs. This is a curious result, that a defendant should benefit because his co-offenders were not apprehended. I do not believe that the statutes require this to be so.

Put simply, I believe a defendant must be assessed OV points if they aided and abetted the conduct that serves as the basis for scoring the OVs. Accordingly, even if a co-offender is not assessed points under an OV with a multiple-offender provision, rendering

that multiple-offender provision inapplicable, the defendant must still be assessed points for that OV if the defendant aided and abetted conduct addressed by that OV. This reading of the OV statutes is consistent with the aiding-and-abetting statute[1] and our caselaw. Further, this reading would not render the multiple-offender provisions in OVs 1 and 2 nugatory. Rather, the existence of a multiple-offender provision means that aiding and abetting the crime itself is sufficient to warrant scoring the defendant identically to their co-offenders; so long as one co-offender is assessed points for an OV with a multiple-offender provision, those who aided and abetted the crime may be assessed points for that OV. For OVs without a multiple-offender provision, or when that provision is inapplicable, a defendant must have aided and abetted the conduct that supports assessing points for the OV at issue; that is, merely aiding and abetting the crime itself does not support assessing points for an OV without a multiple-offender provision. Therefore, because defendant aided and abetted conduct that must be scored under OVs 1 and 2, I dissent from this Court's conclusions that OVs 1 and 2 should have been scored at zero points in this case and that defendant is entitled to resentencing.

I agree with the majority's summary of the facts. In short, defendant and two accomplices robbed a store in 2012. Only one of the three was armed, and it was not defendant. Of the three offenders, only defendant was apprehended. He was convicted of armed robbery and was sentenced, as a fourth-offense habitual offender, to serve 360 to 720 months (30 to 60 years) in prison. Defendant appealed, challenging the scoring of OVs 1 and 2, and the Court of Appeals affirmed in an unpublished opinion.

---

[1] MCL 767.39.

This case turns on the correct scoring of OVs 1 and 2, which the sentencing court scored at 15 points and 5 points, respectively. Fifteen points should be assessed for OV 1, concerning aggravated use of a weapon, when "[a] firearm was pointed at or toward a victim . . . ." MCL 777.31(1)(c). Five points should be assessed for OV 2, concerning the lethal potential of the weapon used, when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon . . . ." MCL 777.32(1)(d). Both OVs contain the same language, which is the source of the dispute in this case. The statutes instruct, "In multiple offender cases, if 1 offender is assessed points for [the OV], all offenders shall be assessed the same number of points."[2]

As an initial matter, I agree with defendant and the majority that defendant's own conduct during the offense does not directly support scoring OVs 1 and 2, given that defendant did not personally use or possess the gun during the armed robbery and that he did not point the gun at the victim. I also agree with defendant and the majority that the multiple-offender provisions in OVs 1 and 2 are not triggered because none of defendant's co-offenders was "assessed points" under OVs 1 and 2. The language contains two conditions—first, the case must be a multiple-offender case, and second, one offender "is assessed" points for the OV. Because the second condition is not satisfied here, the instruction to assess defendant the same number of points as his co-offenders is inapplicable. Nonetheless, I disagree with the majority that defendant may not be assessed points under those OVs based on his conduct during the offense.

---

[2] MCL 777.31(2)(b) ("In multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points."); MCL 777.32(2) ("In multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points.").

3

First, the majority's conclusion improperly disregards MCL 767.39, which abolishes the distinction between an accessory and a principal in Michigan. MCL 767.39 states, "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." The majority contends that MCL 767.39 means that an aider and abettor should be charged with the same offense as if they were the principal but that the statute does not apply to the scoring of the OVs.

I disagree with the majority's narrow reading of MCL 767.39. The language of that statute is broad, saying that an aider and abettor should be "*prosecuted, indicted, tried and on conviction shall be punished* as if he had directly committed such offense." (Emphasis added.) If the Legislature meant to indicate only that a defendant should be charged with the crime that the principal committed, the Legislature could have stated merely that an aider and abettor should be "prosecuted, indicted, [and] tried" as if they were the principal and there would be no need for the statute's reference to punishment. In other words, the instruction in MCL 767.39 that an aider and abettor "shall be punished as if he had directly committed [the] offense" cannot mean, as the majority contends, only that the aider and abettor is charged with the same crime as the principal, because that would be subsumed within the language in MCL 767.39 instructing that the aider and abettor be "prosecuted, indicted, [and] tried . . . as if he had directly committed [the] offense." Accordingly, MCL 767.39 must have some application to punishment, and specifically to the OVs.[3]

---

[3] MCL 767.39's reference to the "offense" includes not only the crime itself but also the "offense" for which the OV is scored. *Merriam-Webster* defines "offense," in relevant part, as "an infraction of law." Merriam-Webster.com Dictionary, *offense*

4

Reading MCL 767.39 *in pari materia* with the OV statutes, MCL 777.31 *et seq.*, it is appropriate to assess points under an OV if the defendant aided and abetted the specific conduct that serves as the basis for scoring the OV.[4] Such a reading is consistent with our caselaw. In *People v Gloster*, 499 Mich 199, 202; 880 NW2d 776 (2016), the defendant drove his codefendants to Hamtramck, where the codefendants singled out and attacked a woman, attempting to steal her necklace. The codefendants fled the scene, and the defendant later picked them up and drove them away from the area where the crime had occurred. *Id*. The defendant was convicted of armed robbery under an aiding-and-abetting theory, *id*. at 203, and the trial court assessed the defendant 15 points for OV 10, which is appropriate when "[p]redatory conduct was involved." MCL 777.40(1)(a). The Court of Appeals upheld the trial court's score, concluding that the defendant aided and abetted in the commission of an offense that involved "the exact sort of predatory conduct [that] OV 10 is designed to punish." *Gloster*, 499 Mich at 203 (quotation marks and citation omitted).

---

<https://www.merriam-webster.com/dictionary/offense> (accessed December 12, 2022) [https://perma.cc/W7VQ-RKAF]. Not only are traditional crimes obviously infractions of law, but the various kinds of conduct addressed by the OVs are also infractions of law that the OV statutes punish through the assessment of points, which, in turn, can raise a defendant's guidelines minimum sentence range.

[4] Reading MCL 767.39 *in pari materia* with MCL 777.31 *et seq.* is appropriate. "Under the doctrine [of *in pari materia*], statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law. An act that incidentally refers to the same subject is not *in pari materia* if its scope and aim are distinct and unconnected." *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015) (citation omitted). Both MCL 767.39 and MCL 777.31 *et seq.* are in the Code of Criminal Procedure, which has the purpose of "provid[ing] for judgments and sentences of persons convicted of criminal offenses and ordinance violations . . . ." 1994 PA 445, title. Therefore, MCL 767.39 and MCL 777.31 *et seq.* do not merely incidentally refer to the same subject, but rather, they share a common purpose.

5

This Court reversed and unanimously held that because of the multiple-offender provision exclusive to OVs 1, 2, and 3,[5] "a defendant shall not have points assessed solely on the basis of his or her co-offenders' conduct unless the OV at issue specifically indicates to the contrary." *Id*. at 206. This Court cited *People v Hunt*, 290 Mich App 317; 810 NW2d 588 (2010), which considered OV 7 and held that the defendant could not be assessed points when he took no part in the conduct serving as the basis for scoring OV 7. *Gloster*, 499 Mich at 206 n 16. *Hunt* reasoned:

> [W]hile defendant was present and armed during the commission of the crimes here, *he did not himself commit, take part in, or encourage others to commit acts constituting "sadism, torture, or excessive brutality" under OV 7*. Moreover, unlike OV 1, OV 2, and OV 3, OV 7 does not state that "[i]n multiple offender cases, if 1 offender is assessed points for [the applicable behavior or result], all offenders shall be assessed the same number of points." For OV 7, *only the defendant's actual participation should be scored*. [*Hunt*, 290 Mich App at 325-326 (citations omitted; emphasis added; second and third alterations in original).]

Thus, the reasoning of *Hunt* and *Gloster* supports the conclusion that, outside of OVs 1, 2, and 3, to be assessed points under an OV a defendant must have actually participated in the conduct by either committing, taking part in, or encouraging others to commit the conduct addressed by the OV.[6]

_____

[5] While OV 3 is not at issue in this case, like OVs 1 and 2, OV 3 contains a multiple-offender provision; that provision states, "In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders must be assessed the same number of points." MCL 777.33(2)(a).

[6] Notably, aiding and abetting can take several forms. MCL 767.39 penalizes one who "procures, counsels, aids, or abets in [a crime's] commission . . . ." We have noted that such language was essentially the traditional definition of aiding and abetting, which was to " '[h]elp, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its

6

That is, with respect to all OVs, aiding and abetting the conduct addressed by the OV always warrants the assessment of points for that OV. With regard to OVs 1, 2, and 3, aiding and abetting the crime generally is sufficient to warrant scoring the defendant identically to their co-offenders, so long as one co-offender is assessed points for the OV. But even if a co-offender is not assessed points under OVs 1, 2, and 3—such that the multiple-offender provisions do not apply—the defendant may still be assessed points for those OVs if they aided and abetted the conduct addressed by those OVs. This is consistent with MCL 767.39's statement that aiders and abettors should be punished as if they directly committed the offense.

Importantly, this interpretation of the OV statutes does not render the multiple-offender provisions in OVs 1, 2, and 3 nugatory. Indeed, if aiding and abetting the crime itself justified scoring the OVs based on the principal's conduct alone, then the aider and abettor would always be assessed the same points as the principal and there would be no need for OVs 1, 2, and 3 to make clear that a co-offender's conduct alone may justify the assessment of points. Therefore, there must be a distinction between a defendant's aiding-and-abetting conduct supporting a conviction and a defendant's aiding-and-abetting conduct supporting a specific sentence. That distinction exists by recognizing that while a defendant may not be assessed points based solely on a co-offender's conduct unless the OV states otherwise (i.e., a multiple-offender provision), a defendant may be assessed points when they aided and abetted the conduct that serves as the basis for scoring the OV—not merely aided and abetted the crime itself.

---

commission.' " *People v Robinson*, 475 Mich 1, 8 n 17; 715 NW2d 44 (2006) (alteration in original), quoting *Black's Law Dictionary* (5th ed), p 63.

7

Applying that rule to the instant case, although the multiple-offender provisions of OVs 1 and 2 do not apply, defendant aided and abetted the conduct at issue in OVs 1 and 2. Defendant was present during the armed robbery when his co-offender was using the weapon. After his co-offender pointed the gun at the victim, defendant helped to bind the victim with duct tape. Later, when defendant and his co-offender tried to escape, the co-offender hit the victim on the head with the firearm. Defendant's conduct constitutes aiding and abetting the use of the firearm. Defendant at least promoted and encouraged the use of the gun by actively taking part in the armed robbery while his co-offender was using the gun, and he took advantage of the fear that the gun inspired in the victim by binding the victim after the gun was wielded against him. Unlike the defendant in *Gloster*, defendant here was not a getaway driver with possibly no knowledge that his co-offender had used a firearm. Instead, he aided and abetted his armed co-offender in the exact conduct addressed in OVs 1 and 2.

Importantly, the majority's holding has eyebrow-raising practical effects. The majority's ruling provides a fairly significant benefit to defendants in multiple-offender situations so long as their co-offenders are never caught. Why the Legislature might have wanted to do that is anybody's guess. While I believe the text of the statute controls and, for the reasons discussed, that the text supports my reading, the practical implications of the majority's holding should be enough to warrant at least a pause to consider whether the Court is truly on the right track.[7]

---

[7] Additionally, I question whether, under the majority's interpretation, defendant's co-offenders, if any of them were to be apprehended and convicted in the future, must also be assessed zero points for OV 1 and OV 2 because this score was assigned to defendant. In that scenario, one offender, namely defendant, would arguably have been assessed points

8

The majority's reading of the statutory scheme will lead to some perplexing results. For the reasons set out in this opinion, I do not believe the text of the statute mandates such results. Reading MCL 777.31 and MCL 777.32 *in pari materia* with MCL 767.39 and applying our reasoning from *Gloster*, I conclude that even without the application of the multiple-offender provisions, a defendant can be assessed points under OVs 1 and 2 if they aided and abetted the conduct at issue in those OVs. Under these facts, I believe defendant here did aid and abet the conduct at issue, and OVs 1 and 2 were consequently properly scored. Therefore, I dissent.

Elizabeth T. Clement
Brian K. Zahra

BOLDEN, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

---

under the OV; although the sentencing court assessed defendant zero points, that is plausibly still the assessment of points. Both conditions of the multiple-offender provision being met in this hypothetical scenario, MCL 777.31(2)(b) and MCL 777.32(2) may mandate, according to the majority's ruling, that the co-offenders be "assessed the same number of points."